**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **AGIS SOFTWARE DEVELOPMENT LLC,** | |
| **Plaintiff,** | **CIVIL ACTION NO. 2:17-cv-514-JRG** (LEAD) |
| **vs.** | |
| **HTC CORPORATION,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## DEFENDANT HTC CORPORATION'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2) OR, IN THE ALTERNATIVE, TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) TO THE NORTHERN DISTRICT OF CALIFORNIA

# TABLE OF CONTENTS

**Page**

I.      Introduction ................................................................................................... 1

II.     Factual background ........................................................................................ 2

    A.      Procedural background and AGIS's ephemeral ties to East Texas ...................... 2

    B.      HTC Corp. and its subsidiaries have no ties to the Eastern District of
        Texas ................................................................................................................... 4

        1.      HTC Corp. is a foreign corporation based in Taiwan ............................... 4

        2.      HTC America is HTC Corp.'s American subsidiary ................................. 5

        3.      HTC America Innovation, Inc. has offices in San Francisco ................... 5

    C.      Third party Google is located in the Northern District of California ................... 6

    D.      Other third parties either reside in the Northern District of California or
        outside the Eastern District of Texas .................................................................. 6

III.    Legal standard ............................................................................................... 7

    A.      Personal jurisdiction standard ............................................................................ 7

    B.      Transfer of venue ............................................................................................... 9

IV.     Argument ..................................................................................................... 11

    A.      AGIS's complaint should be dismissed for lack of personal jurisdiction ........... 11

        1.      HTC Corp. is not subject to general jurisdiction in the Eastern
            District of Texas ................................................................................... 11

        2.      HTC Corp. is not subject to specific jurisdiction in the Eastern
            District of Texas ................................................................................... 12

        3.      HTC Corp. is not subject to personal jurisdiction under the stream
            of commerce theory .............................................................................. 13

        4.      Exercise of jurisdiction over HTC Corp. would not be reasonable
            or fair .................................................................................................... 14

    B.      The Court should transfer this case to the Northern District of California
        under 28 U.S.C. § 1404(a) ................................................................................ 15

        1.      The Court should disregard AGIS's ephemeral contacts with Texas ...... 15

        2.      AGIS could have brought suit in the Northern District of California ...... 16

        3.      Private interest factors weigh in favor of transfer ................................... 16

            a.      The relative ease of access to sources of proof favors
                transfer to the Northern District of California ............................ 16

**TABLE OF CONTENTS**
**(continued)**

Page

b.    The availability of compulsory process to secure the
attendance of witnesses favors the Northern District of
California ................................................................................... 19

c.    Convenience for witnesses favors transfer to the Northern
District of California .................................................................. 20

d.    The Northern District of California is easier for practical
purposes ..................................................................................... 23

4.    As a whole, the public interest factors favor transfer to the
Northern District of California.................................................................. 24

V.    Conclusion ................................................................................................... 25

## TABLE OF AUTHORIITES

**CASES**                                                                   **PAGE(S)**

*3D Sys., Inc. v. Aarotech Labs., Inc.,*
    160 F.3d 1373 (Fed. Cir. 1998)..................................................................................7

*3G Licensing, SA, et al. v. HTC Corp. et al,*
    No. 17-83-LPS-CJB, D.I. 73 (D. Del. 2017) ........................................................14

*AFTG-TG, LLC v. Nuvoton Tech. Corp.,*
    689 F.3d 1358 (Fed. Cir. 2012)...............................................................................7, 9

*Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.,*
    480 U.S. 102 (1987)...............................................................................................8, 9, 13

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,*
    566 F.3d 1012 (Fed. Cir. 2009)..................................................................................7

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
    21 F.3d 1558 (Fed. Cir. 1994)....................................................................................9

*Blue Spike, LLC v. Huawei Technologies Co., Ltd., et al,*
    No. 6:13-cv-00679-RWS, 2016 WL 3951665 (E.D. Tex. 2016)................................... passim

*Blue Spike, LLC v. Texas Instruments, Inc.,*
    6:12-CV-499, 2014 WL 11829323 (E.D. Tex. 2014).......................................................7, 8, 9

*Blue Spike LLC v. Texas Instruments, Inc. et al.,*
    6:12-cv-00499, 2013 WL 12062262 (E.D. Tex. 2014).............................................................8

*Blue Spike LLC v. Texas Instruments, Inc. et al.,*
    No. 6:12-cv-00499, 2014 WL 11858195 (E.D. Tex. 2014).......................................................8

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,*
    444 F.3d 1356 (Fed. Cir. 2006)..................................................................................7

*Campbell Pet Co. v. Miale,*
    542 F.3d 879 (Fed. Cir. 2008)....................................................................................7

*Celgard, LLC v. SK Innovation Co., Ltd.,*
    792 F.3d 1373 (Fed. Cir. 2015)...............................................................................7, 12

*Cheetah Omni, LLC v. NP Photonics, Inc.,*
    No. 6:13-cv-00418, 2014 WL 11709437 (E.D. Tex. 2014)...........................................7, 8, 12

*ColorQuick, L.L.C. v. Vistaprint Ltd.,*
    No. 6:09-CV-323, 2010 WL 5136050 (E.D. Tex. Jul. 22, 2010) ...........................................24

# TABLE OF AUTHORIITES
## (continued)

CASES                                                                                           PAGE(S)

*Daimler Ag v. Bauman*,
    134 S. Ct. 746 (2014) ........................................................................................8, 11

*Dalton v. R & W Marine, Inc.*,
    897 F.2d 1359 (5th Cir. 1990) ...................................................................................12

*Fellowship Filtering Techs., LLC v. Alibaba.com, Inc. et al.*,
    No. 2:15-cv-2049-JRG, 2016 WL 6917272 (E.D. Tex. Sept. 1, 2016) ...................12

*Freudensprung v. Offshore Technical Servs., Inc.*,
    379 F.3d 327 (1985)....................................................................................................9

*Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*,
    No. 2:17-cv-00100-JRG-RSP, 2017 WL 4076052 (E.D. Tex. 2017)............................ passim

*Gonzalez v. Autotrader.com*,
    2:14-cv-650-JRG-RSP, 2015 WL 1387858......................................................20, 23

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011)..............................................................................................11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)....................................................................................................7

*In re Acer Am. Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010)................................................................................19

*In re Genentech, Inc.*,
    566 F.3d 13838 (Fed. Cir. 2009)..............................................................17, 20, 21

*In re Hoffmann-LaRoche, Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009)................................................................................25

*In re Microsoft Corp.*,
    630 F.3d 1361 (Fed. Cir. 2011)..........................................................................15, 16

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009)................................................................................15

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ..................................................................10, 16, 23, 24

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..............................................................................16, 19

# TABLE OF AUTHORIITES
## (continued)

CASES                                                                  PAGE(S)

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)................................................................25

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..............................................................................7

*J. McIntyre Machinery, Ltd. v. Nicastro*,
    564 U.S. 873 (2011) (Supreme Court failing to announce majority opinion) ..........................9

*Johnston v. Multidata Sys. Int'l Corp.*
    523 F.3d 602 (5th Cir. 2008) ................................................................7

*Klaustech, Inc. v. AdMob, Inc.*,
    6:10-cv-39, 2010 WL 11484498 (2010) ................................................25

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
    232 F.3d 1369 (Fed. Cir. 2000)............................................................7

*Moncrief Oil Int'l, Inc. v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007) ..............................................................7

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*,
    No. 2:10-CV-224-JRG, 2012 WL 194382 (E.D. Tex. 2012) ..........................................15, 19

*Phonometrics, Inc. v. Northern Telecom Inc.*,
    133 F.3d 1459 (Fed. Cir. 1998)............................................................12

*Princeton Digital Image Corp. v. Facebook, Inc.*,
    No. 2:11-CV-400-JRG, 2012 WL 3647182 (E.D. Tex. 2012) ................................................7

*Regent Mkts. Grp., Ltd. v. IG Mkts., Inc.*,
    No. 2:10-cv-42-TJW, 2011 WL 1135123 (E.D. Tex. Mar. 25, 2011)....................................20

*Stroman Realty, Inc. v. Wercinski*,
    513 F.3d 476, 487 (5th Cir. 2008) ........................................................9

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    137 S.Ct. 1514 (2017)......................................................................1, 14

*Uniloc USA, Inc. et al v. Apple Inc.*,
    No. 2:17-cv-00258-JRG, D.I. 104 at 8 (E.D. Tex. 2017) ................................................ passim

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014)......................................................................12

## **TABLE OF AUTHORIITES**
### (continued)

**CASES**                                                                                                                 **PAGE(S)**

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
    2:10-CV-364-JRG, 2012 WL 506669 (E.D. Tex. 2012) .......................................................25

*Zoch v. Daimler, AG*,
    No. 6:16-cv-00057-RWS, 2017 WL 2903264 (E.D. Tex. 2017)............................................14

**STATUTES**

28 U.S.C. § 1404(a) .............................................................................................................. passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(2)...................................................................................................1, 2, 15, 25

Defendant HTC Corporation ("HTC Corp.") respectfully submits this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, in the alternative, to transfer venue to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I.      Introduction

Plaintiff AGIS Software Development LLC ("AGIS") has no legitimate connection to this District.  AGIS's parent company, Advanced Ground Information Systems, Inc. ("AGIS Florida"), unsuccessfully brought suit on related patents in the Southern District of Florida.  That case lacked merit, resulting in AGIS Florida paying attorneys' fees to the defendant.  AGIS Florida is now forum shopping to find another jurisdiction through recently-incorporated AGIS.  But this District is not appropriate for this case.  HTC Corp. has no connection to this District, and personal jurisdiction against HTC Corp. would not be reasonable.  Moreover, even if this Court did have jurisdiction over HTC Corp., transfer of this case to the Northern District of California is clearly more convenient given the convenience of party and third party witnesses, especially Google, Inc. ("Google") who makes the software that is "[t]he heart of the invention."

In an effort to avoid proper venue in the Northern District of California or the Western District of Washington, AGIS only named HTC Corp. but not HTC America, Inc ("HTC America").  HTC Corp. designs and manufactures smartphones in Taiwan, while HTC America imports and sells smartphones in the United States.  While AGIS has attempted to end-around the Supreme Court's *TC Heartland* decision, it must still establish personal jurisdiction over HTC Corp., something it did not do in its complaint, and something it cannot do.  HTC Corp. does not purposely avail itself into this District—HTC Corp. makes smartphones in Taiwan and HTC America's actions, or the unilateral actions of other third parties, cannot be imputed to HTC Corp. for this Court to exercise personal jurisdiction.

While this Court lacks personal jurisdiction over HTC Corp., even if jurisdiction existed,

the Northern District of California is clearly the most convenient court to hear this case.  AGIS

did not even exist until a few weeks before this suit was filed.  None of its key witnesses are in

East Texas—the trial record from the previous case establishes this unequivocally.  HTC Corp.

also has no witnesses or documents in this District, and the Northern District of California is

much more convenient for those witnesses.  The Northern District of California is also

significantly more convenient for third parties such as Google who, in California, designs and

maintains the highly confidential source code for the actual applications accused of infringement

in this case.  Likewise, one of the co-inventors on the Patents-in-Suit is located in Washington,

much closer to the Northern District of California.

For these reasons, as discussed in more detail below, HTC Corp. respectfully requests

that this case be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because exercising personal

jurisdiction over HTC Corp. does not comply with the due process requirements.  In the

alternative, HTC Corp. requests that this case be transferred to the Northern District of California

pursuant to 28 U.S.C. § 1404(a).

## II.    Factual background

### A.    Procedural background and AGIS's ephemeral ties to East Texas

AGIS Florida lost "an exceptionally weak case" of patent infringement at trial on related

patents in the Southern District of Florida[1] where it was ordered to pay defendant Life360, Inc.

$684,190.25 in fees.[2]  About a year and a half later, on June 20, 2017, AGIS sued HTC Corp. in

the Eastern District of Texas on child patents of those that were asserted in the Florida Case.[3]

---

[1] The Southern District of Florida case is referred to hereinafter as the "Florida Case."
[2] *See* Bombach Decl., Ex. 1 at 2, 4; *see also* Ex. 2.  The declaration of Miguel Bombach ("Bombach Decl.") is concurrently filed with this motion.
[3] U.S. Pat. No. 7,031,728 (the "parent '728 patent") was asserted in the Florida Case.  Bombach Decl., Ex. 3 at 3-4 (showing non-infringement of the '728 patent); *see also id.*, Ex. 4 at ¶ 15 (showing the '728 patent as being asserted).  All of U.S. Pat. Nos. 8,213,970 (the "'970 patent");

AGIS was formed in Texas on June 1, 2017, about two weeks prior to filing suit.  2:17-cv-00513-JRG, D.I. 36-12.  Five days prior to that, AGIS executed an assignment of the Patents-in-Suit from AGIS Holdings, Inc., who in turn received the Patents-in-Suit from AGIS Florida that same day.  2:17-cv-00513-JRG, D.I. 36-8, 36-9, 36-10, 36-11.  The patents originated from inventor Malcolm Beyer, who founded AGIS Florida in 2004 and serves as the CEO of both AGIS and AGIS Florida.  2:17-cv-00513-JRG, D.I. 56-1 at ¶ 4; Bombach Decl., Ex. 5 at ¶ 3.

AGIS Florida was incorporated in Florida and has its principal place of business in Jupiter, Florida, where Mr. Beyer lives and works.  *See* 2:17-cv-00513-JRG, D.I. 56-1 at ¶ 4; Bombach Decl., Ex. 5 at ¶¶ 1, 3-4.  Mr. Beyer's work in Jupiter resulted in the Patents-in-Suit. Bombach Decl., Ex. 5 at ¶ 6.  AGIS Florida developed and sold products such as LifeRing, which allegedly practices the '055, '251, and '838 patents.  D.I. 1 at ¶¶ 10-12; *see also* Bombach Decl., Ex. 6 at 2.  AGIS Florida conducts most of its business in Jupiter (*see* Bombach Decl., Ex. 5 at ¶ 10) and, at least as of the date of the Florida Case, almost all of AGIS Florida's electronic and paper documents, and all of its source code and servers, were housed in Jupiter. *Id.* at ¶ 18.  No documents were housed in its satellite office in Kansas.  *Id.* at ¶¶ 17-18.

Several AGIS-identified witnesses work in Jupiter, Florida: (i) Margaret Beyer, the corporate secretary for AGIS and AGIS Florida (2:17-cv-00513-JRG, D.I. 68-1 at ¶ 20); (ii) Malcolm Beyer III, a programmer for AGIS Florida (*id.*); (iii) Ronald Wisneski, the CFO and treasurer for AGIS Florida and AGIS (*id.*); and (iv) Sandel Blackwell, who works in Jupiter, Florida and Lenexa, Kansas (*id.* at ¶ 18).  Co-inventor Christopher Rice works in Redmond, Washington.  *Id.* at ¶ 20. All of these individuals but Mr. Beyer III were identified as potential witnesses in the Florida Case.  *See* 2:17-cv-00513-JRG, D.I. 74-5 at 2.

---

9,408,055 (the "'055 patent"); 9,445,251 (the "'251 patent"); and 9,467,838 (the "'838 patent") (collectively the "Patents-in-Suit") claim priority to the parent '728 patent.  *See* D.I. 1, Exs. A-D.

To secure venue in Texas, AGIS claims that there will be several new witnesses for its action in Texas that were deemed irrelevant by AGIS Florida in the Florida Case: (i) David Sietsema, who works in Austin, Texas (2:17-cv-513-JRG, D.I. 68-1 at ¶ 17); (ii) Eric Armstrong, who is a programmer for AGIS Florida and lives in Allen, Texas (*id.* at ¶ 15-16); and (iii) Rebecca Clark, who works in quality assurance at AGIS Florida's Kansas office (*id.* at ¶¶ 16, 19).  Despite Mr. Sietsema having worked for AGIS Florida for 12 years and Mr. Armstrong having worked with AGIS Florida between 2010-2014 (*id.* at ¶¶ 15, 17), neither were identified as witnesses or called to trial in the Florida Case.  *See* 2:17-cv-00513-JRG, D.I. 74-4 at ¶¶ 3-4; *see also* 2:17-cv-00513-JRG, D.I. 74-5 and D.I. 74-6.  Neither was Mrs. Clark.  *Id.*  They are all unlikely to have relevant testimony.

**B.    HTC Corp. and its subsidiaries have no ties to the Eastern District of Texas**

**1.    HTC Corp. is a foreign corporation based in Taiwan**

HTC Corp. is a Taiwanese corporation with its principal place of business in New Taipei City, Taiwan.  Lin Decl. at ¶ 2.[4]  HTC Corp. develops, tests, and manufactures the accused smartphones in Taiwan.  *Id.*  HTC Corp. also works to ensure that its Android smartphones adhere to Google's compliance requirements, primarily in Taiwan but also in the Northern District of California.  *Id.* at ¶ 6.  HTC Corp. does not market or sell any phones in the United States.  *Id.* at 4.

HTC Corp. operates in Taiwan and does not have any facilities, retail stores, or employees in the Eastern District of Texas—the vast majority of its employees are in Taiwan.  *Id.* at ¶¶ 3-4.  All of HTC Corp.'s relevant engineering, marketing, or finance records are in Taiwan and none are available in the Eastern District of Texas.  *Id.* at ¶ 8.  HTC Corp. does not have any employees in the Eastern District of Texas that are involved in the development and

---

[4] The declaration of Richard Lin  ("Lin Decl.") is concurrently filed with this motion.

testing of the accused devices.  *Id.* at ¶ 3.  Employees of HTC Corp. do, however, periodically work in the Northern District of California to interface with Google employees relating to the engineering of their smartphones.  *Id.* at ¶ 6.

Google designed the accused apps and services (*e.g.*, Android Device Manager, Find My Device, Google Messages, Android Messenger, Google Hangouts, Google Plus, Google Latitude, and Google Maps, *see, e.g.,* D.I. 1 at ¶¶ 20, 29, 42, and 55).  Google provides some apps to HTC Corp., who in turn installs some of them in Taiwan.  *Id.* at ¶ 7.  HTC Corp. does not obtain source code for Google's apps and cannot modify the accused Google apps and services or their source code.  *Id.*

### 2.      HTC America is HTC Corp.'s American subsidiary

Third party HTC America is a US-based subsidiary of HTC Corp.  Lin Decl. at ¶ 9.  HTC America imports, markets, and sells smartphones in the United States that were made by HTC Corp.  Wiggins Decl. at ¶ 2.[5]  HTC America sells the phones it imports to third-parties.  *Id.* at ¶ 4

HTC America is a Washington State corporation with a principal place of business in Seattle, Washington.  *Id.* at ¶ 1.  All of HTC America's records relating to sales, finance, and marketing are located in the State of Washington—none are in the Eastern District of Texas.  *Id.* at ¶ 5.  HTC America employees responsible for these tasks are located in the State of Washington.  *Id.* at ¶¶ 2-3

### 3.      HTC America Innovation, Inc. has offices in San Francisco

HTC America Innovation, Inc. ("HTC Innovation") is a Washington State corporation.  Lin Decl. at ¶ 10.  HTC Innovation is a subsidiary of HTC Corp. and has a facility in San Francisco.  *Id.*  Employees of HTC Corp. and HTC America can use HTC Innovation's San Francisco facilities to work remotely and securely access documents.  *Id.*  HTC Innovation does

---

[5] The declaration of David Wiggins ("Wiggins Decl.") is concurrently filed with this motion.

not have any facilities or employees in the Eastern District of Texas.  *Id*.

### C.      Third party Google is located in the Northern District of California

Google is central to this case.  AGIS's complaint identifies only the functionality of

Google made apps (*see, e.g.,* D.I. 1 at ¶¶ 20, 29, 42, and 55) as infringing the Patents-in-Suit.[6]

These applications cannot be modified, only installed, by HTC Corp.  *See* Lin Decl. at ¶ 7.

Google has a principal place of business in Mountain View, California, where it designed and

maintains source code for the accused applications.  2:17-cv-00513-JRG, D.I. 36-6 at ¶ 10.

Primary Google witnesses for the accused applications reside in Northern California.  *Id*. at ¶¶ 6-

8 (identifying Abeer Dubey, *id.* at ¶ 1, Mr. Rowny who is the Project Manager of Android

Messages, *id.* at ¶ 6, Mr. Lee who is the Technical Lead for Google Hangouts, *id.* at ¶ 7, and

Mr. Johnson who is the Technical Lead for Google Plus, *id.* at ¶ 8).  No Google employees work

in the Eastern District of Texas.  *Id*. at ¶ 9.

### D.      Other third parties either reside in the Northern District of California or outside the Eastern District of Texas

The prosecuting attorney of the '055, '838, and '251 patents, Daniel Burns, resides in

Santa Clara, California.  Bombach Decl., Ex. 7; *see also* 2:17-cv-00513-JRG, D.I. 38-7, 38-8,

38-9.  The Patent attorney (Barry Haley) who prosecuted the parent '728 patent and the '970

patent resides in Ft. Lauderdale, Florida and has documents relating to the conception and

reduction to practice of the Patents-in-Suit.  Bombach Decl., Ex. 5 at ¶¶ 7-8.

---

[6] AGIS also only accused the operation of Google's apps in its infringement contentions against
HTC Corp., LG Electronics Inc., ("LGEKR"), Huawei Device USA Inc. ("Huawei USA"),
Huawei Device Co., Ltd. ("Huawei Device"), and Huawei Device (Dongguan) Co., Ltd.
("Huawei Dongguan") (collectively "Huawei").  *See* Bombach Decl., Ex. 30; 2:17-CV-513-JRG,
D.I. 75-1 and 76-1 (AGIS's infringement contentions against Huawei); 2:17-CV-513-JRG, D.I.
78-1 and 79-1(AGIS's infringement contentions against LGKER).

### III.     Legal standard

### A.     Personal jurisdiction standard

Personal jurisdiction is governed by Federal Circuit law in patent infringement actions. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1016 (Fed. Cir. 2009); *see also Blue Spike, LLC v. Texas Instruments, Inc.*, 6:12-CV-499, 2014 WL 11829323 at *1 (E.D. Tex. 2014).  The prima facie burden is on the plaintiff to establish that the court has jurisdiction.  *See Blue Spike*, 2014 WL 11829323 at *1; *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).  "In assessing personal jurisdiction, this Court is not required to credit conclusory allegations."  *Princeton Digital Image Corp. v. Facebook, Inc.*, No. 2:11-CV-400-JRG, 2012 WL 3647182, at *2 (E.D. Tex. 2012) (dismissing one defendant while transferring others); *see also AFTG-TG, LLC v. Nuvoton Tech. Corp*., 689 F.3d 1358, 1361 (Fed. Cir. 2012).

"A court's exercise of personal jurisdiction over a non-resident defendant comports with constitutional due process[7] requirements when (1) the defendant 'purposefully availed' itself of the benefits and protections of the forum state by establishing 'minimum contacts' with that state, and (2) the exercise of personal jurisdiction does not offend traditional notions of 'fair play and substantial justice.'"  *Blue Spike,* 2014 WL 11829323 at *2 (citing *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)).  "Both prongs must be satisfied for a court to exercise personal jurisdiction over the defendant."  *Id.* (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).

---

[7] "A court can exercise personal jurisdiction over an out-of-state defendant if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)" (*see Cheetah Omni, LLC v. NP Photonics, Inc.*, No. 6:13-cv-00418, 2014 WL 11709437 at *1 (E.D. Tex. 2014) (citing *LSI Indus. Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1371 (Fed. Cir. 2000) and *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376–77 (Fed. Cir. 1998)) and the Texas "long-arm statute to reach[es] as far as the federal Constitution permits." *Blue Spike*, 2014 WL 11829323 at *1.  The analysis of Texas's long-arm statute collapses into the federal due-process inquiry. *Id.*

"Minimum contacts" is satisfied through general or specific jurisdiction.  *Blue Spike,* 2014 WL 11829323 at *2 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  The exercise of general jurisdiction allows a "court [to] assert jurisdiction over a foreign corporation to hear any and all claims against it only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler Ag v. Bauman*, 134 S. Ct. 746, 751 (2014) (quotations omitted).  General jurisdiction lies in the corporation's easily ascertainable principal place of business.  *Id.* at 760.

"A court may exercise specific jurisdiction over a defendant where the cause of action 'arises out of' or 'relates to' the defendant's in state activity." *Cheetah*, 2014 WL 11709437 at *1 (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1360–61 (Fed. Cir. 2006)).  "This analysis requires courts to inquire '(1) whether the defendant has purposefully directed his activities at residents of the forum; and (2) whether the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* (quoting *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008)).  The focus of the inquiry is on the relationship between the defendant, the forum, and the litigation where simply suffering the harm in Texas is insufficient. *Blue Spike,* 2014 WL 11829323 at *2 (citations omitted).  Actions of a defendant's partners or third parties cannot be imputed to the defendant.[8]

Minimum contacts can also be met under the stream of commerce theory.  *See, e.g., Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 102 (1987).

---

[8] *See Blue Spike LLC v. Texas Instruments, Inc. et al.*, No. 6:12-cv-00499, 2014 WL 11858195 at *3 (E.D. Tex. 2014) (granting motion to dismiss based on lack of personal jurisdiction); *Blue Spike LLC v. Texas Instruments, Inc. et al.*, 6:12-cv-00499, 2013 WL 12062262 at *3 (E.D. Tex. 2014) (stating that actions of third-party customers cannot be imputed to defendant while granting motion to dismiss for lack of personal jurisdiction).

The law on the correct approach to the stream of commerce theory is uncertain but guided by opinions of Justices O'Connor and Brennan in *Asahi*.[9]  J. O'Connor, joined by three justices, stated that mere foreseeability or awareness is insufficient, and that there must be some additional conduct of the defendant purposefully directed toward the forum state.  *See Asahi*, 480 U.S. at 112.  On the other side, J. Brennan, joined by three other justices, disagreed with the O'Connor plurality.  To those justices, mere foreseeability or awareness of the defendant that its product would wind up in the forum state is sufficient.  *See id.* at 117.  This Court assesses application of the stream of commerce theory on a case-by-case basis.  *See Blue Spike, LLC v. Huawei Technologies Co., Ltd., et al*, No. 6:13-cv-00679-RWS, 2016 WL 3951665 at *2 (E.D. Tex. 2016) (granting dismissal based on lack of personal jurisdiction).

"If the plaintiff makes a prima facie showing of minimum contacts, then the burden shifts to the defendant to show that the Court's exercise of jurisdiction would not comply with 'fair play' and 'substantial justice.'"  *Blue Spike*, 2014 WL 11829323 at *2 (citing *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (1985)).  "The Court's fundamental fairness analysis must consider (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the several states' shared interest in furthering fundamental social policies."  *Id.* at *2 (citing *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008)).

### B.    Transfer of venue

"Section 1404(a) provides that '[f]or the convenience of parties and witnesses, in the

---

[9] *See, e.g., J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) (Supreme Court failing to announce majority opinion); *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363 (Fed. Cir. 2012) (stating that the law remains the same after McIntyre); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (declining to decide whether to adopt Justice O'Connor's or Justice Brennan's tests).

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.'" *Uniloc USA, Inc. et al v. Apple Inc.*, No. 2:17-cv-00258-JRG, D.I. 104 at 8 (E.D. Tex. 2017) (quoting 28 U.S.C. § 1404(a)).[10]  A motion to transfer should be granted if defendant shows that the transferee venue is clearly more convenient.[11]  *See Uniloc*, 2:17-cv-00258-JRG at 8.

As a threshold issue, the first inquiry in whether a case is eligible for "§ 1404(a) transfer is 'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.'"  *Uniloc*, 2:17-cv-00258-JRG at 8 (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*")).  Once this is met, this district looks at several private factors: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* (citing *Volkswagen I*, 371 F.3d at 203).

This district also looks at public factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* at 9 (citing *Volkswagen I*, 371 F.3d at 203).  The private and public factors are not exhaustive or exclusive, and no single factor is dispositive (*id.*), but this court has recognized that the location of parties "likely to have extensive relevant information concerning the design and manufacturing of the accused products" is a "particularly compelling" consideration.  *Godo Kaisha IP Bridge 1 v.*

---

[10] This case is attached to the Bombach Decl. as Ex. 8.

[11] "In the Fifth Circuit, the 'venue privilege' contributes to the defendant's elevated burden of proving that the transferee venue is 'clearly more convenient' than the transferor venue." *See Uniloc*, 2:17-cv-00258-JRG at 9.

*Xilinx, Inc.*, No. 2:17-cv-00100-JRG-RSP, 2017 WL 4076052 at *3 (E.D. Tex. 2017).

## IV.    Argument

### A.    AGIS's complaint should be dismissed for lack of personal jurisdiction

AGIS has provided a bare-bones and insufficient allegation of jurisdiction.  D.I. 1 at ¶¶ 3-

4.  As described below, HTC Corp. is not subject to personal jurisdiction in this district.

### 1.    HTC Corp. is not subject to general jurisdiction in the Eastern District of Texas

HTC Corp. is a foreign corporation with a principal place of business in Taiwan.  But,

"[g]eneral jurisdiction is only available in a forum where defendant is at home." *Blue Spike v*

*Huawei*, 2016 WL 3951665 at *1 (citation omitted).  To assert general jurisdiction, a foreign

defendant's affiliations with the state must be "so continuous and systematic as to render [it]

essentially at home in the forum State." *Id.* (citing *Daimler*, 134 S. Ct. at 760).  HTC Corp. does

not engage in activities that would make Texas its home.

Taiwan is HTC Corp.'s home—it develops, tests, and sells smartphones in Taiwan but

does not conduct any of these activities, or have facilities, in the Eastern District of Texas.  *See*

Lin Decl. at ¶¶ 3-4.  AGIS's complaint contains only the barest of assertions that HTC Corp.

conducts business in and commits patent infringement in the Eastern District of Texas (D.I. 1 at ¶

4) but, even if true, that does not rise to the required level of continuous and systemic contact.

*See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (precluding

the exercise of general jurisdiction over a foreign corporation merely because it is alleged to do

business in the forum state).  Nor are acts conducted by HTC America relevant.  *See, e.g.,*

*Daimler*, 134 S. Ct. at 760 (finding a lack of general jurisdiction despite the actions of the

subsidiary).  Exercising general jurisdiction over HTC Corp. does not comply with due process.

### 2. HTC Corp. is not subject to specific jurisdiction in the Eastern District of Texas

This case does not arise out of or relate to any activity conducted by HTC Corp. in the Eastern District of Texas. *See Cheetah*, 2014 WL 11709437 at *1. HTC Corp. makes smartphones in Taiwan (Lin Decl. at ¶ 2) whereas HTC America markets and sells phones in the United States. Wiggins Decl. at ¶ 2.

The activities of HTC America, however, cannot be used for this Court to obtain specific jurisdiction over HTC Corp. "[T]he mere existence of a parent-subsidiary relationship will not support the assertion of jurisdiction over a foreign parent." *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990); *see also Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1463 (Fed. Cir. 1998) (dismissing parent co-defendant from suit for lack of personal jurisdiction since subsidiary's contacts with the forum did not impute to the parent where the parent did not control the subsidiary's every day actions). HTC America imports phones from Taiwan and provides them to third parties. Wiggins Decl. at ¶¶ 2, 4. Any alleged sale in Texas is through the act of a third-party reseller or customer, and the activity of HTC America or third-party resellers cannot be imputed to HTC Corp. *See Blue Spike v. Huawei*, 2016 WL 3951665 at *2; *Celgard, LLC*, 792 F.3d at 1382. Specific jurisdiction must arise out of contacts that HTC Corp. itself creates with the forum (*Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014)) and HTC Corp. does not create any contacts with Texas.[12]

---

[12] AGIS has not in its complaint nor could it state that HTC America is the alter ego of HTC Corp. HTC America and HTC Corp. have the typical parent/subsidiary relationship. *See Fellowship Filtering Techs., LLC v. Alibaba.com, Inc. et al.*, No. 2:15-cv-2049-JRG, 2016 WL 6917272 at *2 (E.D. Tex. Sept. 1, 2016) ("the typical corporate relationship between a parent and subsidiary, including one hundred percent stock ownership and identity of directors and officers, is not a sufficient basis to impute the contacts of a third party to the defendant under an alter ego theory.").

### 3.   HTC Corp. is not subject to personal jurisdiction under the stream of commerce theory

This court does not have personal jurisdiction over HTC Corp. under either the Justice O'Connor or Justice Brennan stream-of-commerce test.  *Asahi*, 480 U.S. at 112, 117.

With respect to the O'Connor test, there is no, nor does AGIS allege any, "[a]dditional conduct of [HTC Corp. that] may indicate an intent or purpose to serve the market in the forum State."  *Asahi*, 480 U.S. at 112.  HTC Corp. is the manufacturer of smartphones in Taiwan, and HTC America is the entity that imports and distributes smartphones in the United States.  *See* Lin Decl. at ¶ 2; Wiggins Decl. at ¶ 2.  HTC America provides smartphones to distributors, but HTC Corp. does not target Texas nor does it have any distribution agreements in or requiring distribution to Texas.  *See* Lin Decl. at ¶ 5.  The mere possibility that some phones may end up in Texas is not enough.  *Asahi*, 480 U.S. at 112.

The Court should also refuse to exercise personal jurisdiction under the Brennan test because AGIS has failed to describe any facts giving rise to an awareness by HTC Corp. of marketing or sales in Texas.  *See Asahi*, 480 U.S. at 104 (Justice Brennan stating that a court can exercise personal jurisdiction "[a]s long as a defendant is aware that the final product is being marketed in the forum State").  HTC Corp. does not target Texas, nor does it control the unilateral actions of third parties.  *See Blue Spike v. Huawei*, 2016 WL 3951665 at *2 (dismissing complaint for lack of personal jurisdiction when defendant knew resellers sold in Texas but they acted unilaterally).

HTC Corp. expects its phones to sell in the United States, generally, but does not target Texas, specifically.  Lin Decl. at ¶ 5.  HTC America is the entity that provides smartphones to resellers and whether to sell in Texas, or not, is at the discretion of resellers.  Wiggins Decl. at ¶ 4.  Resellers are under no obligation to HTC Corp., nor is there any expectation for them to

market to or sell smartphones in Texas.  Lin Decl. at ¶ 5.  AGIS's allegations would fail under the Brennan test because AGIS has failed to show that activities in Texas are anything more than unilateral activities of third party resellers.  *See Zoch v. Daimler, AG*, No. 6:16-cv-00057-RWS, 2017 WL 2903264, at *5 (E.D. Tex. 2017) (stating that "defendant's contacts must be more than . . . the unilateral activity of another party or third person.'"); *see also Blue Spike v. Huawei*, 2016 WL 3951665 at *2 (granting a motion to dismiss for lack of personal jurisdiction when the defendant was aware that its phones were being sold in the United States but through the unilateral acts of third parties).[13]

### 4.     Exercise of jurisdiction over HTC Corp. would not be reasonable or fair

Exercising jurisdiction over HTC Corp. would not comply with notions of fair play and substantial justice.  AGIS's ties to Texas are ephemeral, and HTC Corp. is in Texas through AGIS's avoidance of *TC Heartland*, which would have required this lawsuit to be filed in Washington if HTC America were properly named.  *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S.Ct. 1514 (2017) (stating, for the purposes of venue, that a domestic corporation resides where it is incorporated or had a regular and established place of business).

Dismissal of this action does not deny AGIS a chance to assert infringement against the sale of HTC phones in the United States.  It only requires AGIS to name HTC America, a proper party that conducts the activities in the United States that would constitute the alleged infringement, in a proper venue.  The Northern District of California is the most fair and

---

[13] A Delaware court has previously stated that it can exercise personal jurisdiction over HTC Corp.  *See 3G Licensing, SA, et al. v. HTC Corp. et al*, No. 17-83-LPS-CJB, D.I. 73 (D. Del. 2017), provided as Bombach Decl., Ex. 25.  In that case, however, the court did not address HTC Corp.'s lack of control of third-party resellers, their unilateral actions, and failed to illustrate any awareness within the forum state, specifically, instead of the United States, generally.  *Id.* at 4. Here, AGIS has not shown or pled facts describing any alleged awareness of HTC Corp. with respect to its phones entering the Texas market.  Furthermore, in that case HTC America was a named party that was ordered to be transferred.

convenient venue for efficient resolution.  Furthermore, as will be explained in Section IV.B.1, *infra*, Texas' interest in adjudicating a suit brought by Floridians against a Taiwanese corporation for acts conducted in Taiwan is minimal.  As also described later in Section IV.B.3.c, *infra*, jurisdiction would also impose a burden on HTC Corp—it is a Taiwanese company with no direct presence in the United States—and other third parties.

This case should be dismissed under Fed. R. Civ. P. 12(b)(2) because exercising personal jurisdiction over HTC Corp. does not comply with the due process requirements.  In the alternative, HTC Corp. requests that this case be transferred to the Northern District of California.

**B.      The Court should transfer this case to the Northern District of California under 28 U.S.C. § 1404(a)**

**1.      The Court should disregard AGIS's ephemeral contacts with Texas**

"[R]ecent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a) analysis."  *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *4 (E.D. Tex. 2012) (citing *In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2011).

AGIS's tie to Texas is an artifact of AGIS Florida's litigation strategy and no weight should be given to AGIS's recent incorporation in Texas.[14]  AGIS Florida pursued an exceptionally weak case in Florida[15] based on patents in the same family as the Patents-in-Suit and formed AGIS several weeks before filing suit in Texas.[16]  AGIS's others claims of ties or witnesses to this district are illusory—newly identified Texas residents Mr. Sietsema or Mr. Armstrong were never identified as witnesses or called to trial in the Florida Case.  *See* 2:17-

---

[14] "[T]he Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the [transfer] analysis."  *See In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009) (citation omitted).
[15] Bombach Decl., Ex. 1 at 2.
[16] 2:17-cv-00513-JRG, D.I. 36-12.

cv-00513-JRG, D.I. 74-4 at ¶¶ 3-4; *see also* 2:17-cv-00513-JRG, D.I. 74-5; D.I. 74-6. This court should discount AGIS's ephemeral connection to Texas. *See Microsoft*, 630 F.3d at 1364-65 ("The only added wrinkle is that [the plaintiff] took the extra step of incorporating under the laws of Texas sixteen days before filing suit. But that effort is no more meaningful, and no less in anticipation of litigation, than the other ones we reject.").

### 2. AGIS could have brought suit in the Northern District of California

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Uniloc*, 2:17-cv-00258-JRG at 8 (quoting *Volkswagen I*, 371 F.3d at 203). HTC Corp. conducts business in the Northern District of California relating to the design of its phones (Lin Decl. at ¶ 6) and this action could have been brought there. Further, because of the convenience, HTC Corp. does not contest jurisdiction there for this case.

### 3. Private interest factors weigh in favor of transfer

#### a. The relative ease of access to sources of proof favors transfer to the Northern District of California

The first private interest factor is the relative ease of access to sources of proof that takes into consideration the location of documents and physical evidence. *In re Volkswagen of Am., Inc.*, 545 F.3d 304 at 316 (5th Cir. 2008) ("Volkswagen II"). Here, critical documentation and sensitive source code is in the Northern District of California. This weighs heavily in favor of transfer to the Northern District of California.

HTC Corp.'s documents relevant to this case are more accessible in the Northern District of California. HTC Corp.'s documents and source code are in Taiwan. Lin at ¶ 8. To the extent that there are any relevant activities in the United States, the information would be outside of Texas with third party HTC America. *See* Wiggins Decl. at ¶. To the extent that electronic

documents and source code are available remotely, they can be securely accessed and maintained at the offices of affiliates HTC Innovation in California or HTC America in Washington.  Lin Decl. at ¶ 10.  Typically, "the bulk of the relevant evidence usually comes from the accused infringer . . . ." (*In re Genentech, Inc*., 566 F.3d 13838, 1345 (Fed. Cir. 2009)) and the location of the party having the design documentation is "particularly compelling."  *Godo*, 2017 WL 4076052 at *3.  This factor weighs heavily in favor of transfer to the Northern District of California.

Third-party Google is located in the Northern District of California and will have most, if not all, of the relevant design documentation and source code.  The functionality and operation of Google's apps are critical, and central, to AGIS's infringement claim.  D.I. 1 at ¶¶ 20, 29, 42, and 55 (accusing functionality of Google-made apps against HTC Corp.).  In its contentions against the Android smartphone makers, AGIS focused ***solely*** on the operation of Google's apps.[17]  The asserted patents' specification talks about "[t]he heart of the invention," which is what Google provides to HTC Corp.  *See, e.g.,* D.I. 1, Ex. A at 4:47-49.  HTC Corp. only installs Google-made apps and cannot modify them.  Lin Decl. at ¶ 7.  Google's source code for its apps is closed, and HTC Corp. does not and cannot obtain access to it.  *Id*.  The knowledge regarding how the Google-made apps works lies exclusively in the hands of Google.  Google, along with its source code (2:17-cv-00513-JRG, D.I. 36-6 at ¶ 10), is located in the Northern District of California.  Liability of HTC Corp. (and other accused Android smartphone makers ZTE,[18] LG, and Huawei) almost certainly hinges entirely on the functionality of the Google-made apps.  Google being in the Northern District of California weighs heavily towards transfer.  *Godo*, 2017

---

[17] Bombach Decl., Ex. 30; 2:17-CV-513-JRG, D.I. 75-1 and 76-1 (AGIS's infringement contentions against Huawei); 2:17-CV-513-JRG, D.I. 78-1 and 79-1(AGIS's infringement contentions against LGEKR)
[18] ZTE collectively refers to ZTE Corp., ZTE (USA) Inc., and ZTE (TX), Inc.

WL 4076052 at *3.

Numerous witnesses also reside in the Northern District of California.  Google's primary witnesses, Messrs. Rowny, Lee, and Johnson, reside there.  *See* 2:17-cv-00513-JRG, D.I. 36-6 at ¶¶ 6-8.  Other documents and witnesses are also located in the Northern District of California. Mr. Burns, the prosecuting attorney for the '055, '838, and '251 patents, and his documents reside in the Northern District of California.  Bombach Decl., Ex. 7; *see also* 2:17-cv-00513-JRG, D.I. 38-7, 38-8, 38-9.  It would be easier to access these documents if the case were transferred to the Northern District of California.

All of AGIS's prospective primary witnesses, and their documents, are located outside of this district.  AGIS's key witnesses are Floridians: (i) Mr. Beyer is the CEO of AGIS Florida and AGIS; (ii) Mrs. Beyer is AGIS's corporate secretary; (iii) Mr. Beyer III is AGIS Florida's system administrator; (iv) Mr. Wisneski is AGIS's CFO and treasurer; and (v) Mr. Blackwell is AGIS's president.[19]  *See* 2:17-cv-00513-JRG, D.I. 77-2 at 17-18.  The prosecuting attorney of the '728 patent, Mr. Burns, is also located in Florida.  Bombach Decl., Ex. 7.  Mr. Rice (a named inventor on the '838 and '251 patents and former CTO of AGIS, Inc.) is located in Redmond, Washington.  2:17-cv-00513-JRG, D.I. 77-2 at 17.  Most of AGIS's key documents are in Florida where AGIS Florida developed the technology and filed the parent '728 patent with Mr. Haley.  AGIS's documents will be just as accessible in the Northern District of California as they are in the Eastern District of Texas.

AGIS's other prospective witnesses that are located closer to Marshall are unlikely to have relevant documents.  Mr. Armstrong appears to reside in this district and is "a former employee and current consultant for [AGIS Florida]."  2:17-cv-00513-JRG, D.I. 77-2 at 18.  But

---

[19] Mr. Blackwell also appears to have presence in Kansas.

Mr. Armstrong worked as a developer with AGIS Florida between 2010 and 2014 and is unlikely to have relevant information because the parent '728 patent was filed in 2004 and this suit was filed in 2017.  2:17-cv-00513-JRG, D.I. 68-1 at ¶ 15.  AGIS's other identified witnesses, Mrs. Clark (quality assurance for AGIS Inc.) and Mr. Sietsema (AGIS Florida employee not having a title), reside outside this district and are unlikely to have relevant documents.  2:17-cv-00513-JRG, D.I. 77-2 at 18.  Despite Mr. Sietsema having worked for AGIS Florida for 12 years and Mr. Armstrong having worked with AGIS Florida between 2010-2014 2:17-cv-00513-JRG, D.I. 68-1 at ¶¶ 15, 17), neither were identified as witnesses or called to trial in the Florida Case. *See* 2:17-cv-00513-JRG, D.I. 74-4 at ¶¶ 3-4; *see also* 2:17-cv-00513-JRG, D.I. 74-5; D.I. 74-6.  Neither was Mrs. Clark.  *Id.*  It is unlikely that they now have relevant documents and testimony simply because this case is now in Texas.  This court should not give any weight to the location of Messrs. Armstrong and Sietsema or Mrs. Clark.  Nor should this court give any weight to AGIS's new litigation-inspired location across the street from the Marshall court house, as discussed in Section IV.B.1, *supra.  See Network Prot. Scis.,* 2012 WL 194382, at *4.

Almost all of the sources of proof are outside this district and only a single witness, who is unlikely to have relevant information, is in the Eastern District of Texas.  This factor heavily weighs in favor of transferring venue to the Northern District of California.

### b. The availability of compulsory process to secure the attendance of witnesses favors the Northern District of California

The second private-interest factor is the Court's availability to compel non-party witnesses to attend trial.  *See Volkswagen II*, 545 F.3d at 316.  "The venue's ability to compel testimony through subpoena power is … an important factor."  *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).  The availability of compulsory process "will weigh more heavily in favor of transfer when more non-party witnesses reside within the transferee venue."  *Regent*

*Mkts. Grp., Ltd. v. IG Mkts., Inc.*, No. 2:10-cv-42-TJW, 2011 WL 1135123, at *3 (E.D. Tex. Mar. 25, 2011).  This factor weighs heavily in favor of transfer to the Northern District of California.

The majority of key third-party witnesses are in the Northern District of California, whereas none are within the Eastern District of Texas.  The operation of Google's apps is critical to this case and Google, with its source code, is located in the Northern District of California.  2:17-cv-00513-JRG, D.I. 36-6 at ¶¶ 3-10.  As explained in Section IV.B.3.a, *supra*, Google's witnesses are also located in the Northern District of California.  Furthermore, the majority of engineers for Android Messages, Google Hangouts, and Google Plus are also located in the Northern District of California.  *Id.* at ¶¶ 4, 6-8.  These witnesses are, in all likelihood, the only witnesses who can discuss the operation of the accused Google-apps because only Google knows its own source code.  In addition, Mr. Burns, the prosecuting attorney of the '055, '838, and '251 patents, is in the Northern District of California.  Bombach Decl., Ex. 7.  All of these witnesses are subject to the compulsory process only in the Northern District of California.

If the case remains in Texas, this Court will be unable to compel important third-party witnesses to testify at trial.  This is not the case in the Northern District of California, and this factor weighs heavily in favor of transfer there.

### c.    Convenience for witnesses favors transfer to the Northern District of California

"The convenience of the witnesses is probably the single most important factor in a transfer analysis."  *Uniloc*, 2:17-cv-00258-JRG at 15 (quoting *Genentech*, 566 F.3d at 1342).  "[T]he convenience of non-party witnesses [] is the more important factor and is accorded greater weight in a transfer of venue analysis."  *Gonzalez v. Autotrader.com*, 2:14-cv-650-JRG-RSP, 2015 WL 1387858 at *2. "When the distance between an existing venue for trial of a matter and

a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Uniloc*, 2:17-cv-00258-JRG at 15 (quoting *Genentech*, 566 F.3d at 1343).

Travel to the Northern District of California to appear for trial is far more convenient for HTC Corp.'s potential witnesses who work in Taiwan.  Lin Decl. at ¶ 2.  Marshall, Texas is approximately 1400 miles further from New Taipei City, Taiwan than San Francisco.  *See* Bombach Decl., Exs. 9 and 10.  The Court should also consider travel time (*see Volkswagen I*, 371 F.3d at Fn.3) and it takes 11 hours to get to San Francisco from Taiwan whereas it takes approximately 18.5 hours to get to Marshall.[20]  In addition, the negative impact to HTC Corp.'s employees day-to-day work will be lessened in the Northern District of California—HTC Corp.'s witnesses can work from HTC Innovation's facilities while in San Francisco.  Lin Decl. at ¶ 10.  This weighs heavily in favor of transferring this case to the Northern District of California.

Transfer is also more convenient for third party HTC America's potential witnesses, Nigel Newby-House and Andrew Pudduck, who are in Washington or the Northern District of California.  *See, e.g.,* Wiggins Decl. at ¶ 3.  It is more convenient to travel from Seattle to San Francisco (2 hours 9 minutes flying; approx. 675 miles) than Seattle to Marshall (5 hours 41 minutes flying to Shreveport; approx. 1800 miles to Marshall).  *See* Bombach Decl., Exs. 26-29.  Like HTC Corp.'s witnesses, HTC America's witnesses could also utilize HTC Innovation's facilities while in San Francisco to lessen the impact to their day-to-day work.  Lin Decl. at ¶ 10.

---

[20] There are numerous non-stop flights to San Francisco from Taipei taking 11 hours.  Bombach Decl., Ex. 11.  All flights to Dallas have at least 1 stop, and the shortest is 15 hours 55 minutes. Bombach Decl., Ex. 12.  Flying into Dallas, however, requires a long drive (approximately 2.5 hours, *see* Bombach Decl., Ex. 13), making the total trip approximately 18.5 hours.  Flights from Taipei to Shreveport, Louisiana are also approximately 18.5 hours.  Bombach Decl., Ex. 14.

Further, co-inventor Mr. Rice lives in Redmond (about 15 miles from Seattle) and would likewise be less burdened if the case were transferred to the Northern District of California. Transfer of venue benefits an inventor and third-party HTC America witnesses.

In addition, the Northern District of California is far more convenient for third-party Google's critical witnesses.  Google and its witnesses are critical to this case, and all of them are in the Northern District of California.  2:17-cv-00513-JRG, D.I. 36-6, ¶¶ 1, 6-8.  In addition, Mr. Burns (prosecuting attorney of the '055, '838, and '251 patents) resides in the Northern District of California.  Marshall is approximately 1600 miles from San Francisco,[21] and air-travel to Marshall would take these witnesses approximately 6 hours.[22]  They would need to find lodging in Marshall whereas it would likely be unneeded in San Francisco.  Travel to Marshall would also negatively impact their day-to-day work.  Transfer to the Northern District of California is appropriate, especially given the necessary involvement of Google's witnesses.

Travel time to San Francisco (as opposed to Marshall) is mostly neutral for AGIS's key party witnesses (Messrs. Beyer, Blackwell, Beyer II, and Mr. Wisneski and Mrs. Beyer) that reside or do business in Florida.  Although Marshall is geographically closer to Southern Florida than San Francisco, the travel times differ only by two hours—air-travel from Miami to San Francisco takes approximately 6.5 hours (Bombach Decl., Ex. 18) whereas air-travel from Miami to Shreveport takes 4.5 hours (Bombach Decl., Ex. 19).  As described in Section IV.B.3.a, *supra*, none of AGIS's other witnesses (Mrs. Clark, Messrs. Sietsema and Armstrong) are likely to have relevant information.  Nonetheless, the inconvenience to Mrs. Clark (Lenexa, Kansas) and Mr. Sietsema (Austin, Texas) is not significant—flights to San Francisco take Mrs. Clark an

---

[21] Bombach Decl., Ex. 15.

[22] Flights from San Francisco to Shreveport take approximately 5.5 hours (Bombach Decl., Ex. 16) and travel through Dallas would take approximately 6 hours.  Bombach Decl., Exs. 17 and 13.

extra 17 minutes[23] and Mr. Sietsema an extra hour[24] and they will need lodging in either venue. The negligible time savings for AGIS's party witnesses, and only a single potential witness living in the Eastern District of Texas, does not weigh in AGIS's favor.  *See, e.g., Uniloc*, 2:17-cv-00258-JRG at 18 (granting transfer to the Northern District of California when witnesses for plaintiff would suffer similar inconveniences if case were kept in the Eastern District of Texas).

Convenience of the witnesses heavily favors transfer to the Northern District of California, which is far more convenient for HTC Corp. and third parties such as HTC America, Google, Mr. Rice, and Mr. Burns.  *Gonzalez*, 2015 WL 1387858 at *2 (stating that convenience of third parties is accorded greater weight).  The Eastern District of Texas provides negligible time savings for AGIS's party witnesses who must travel and seek lodging in either event.  *See Uniloc*, 2:17-cv-00258-JRG at 19 (granting transfer and noting that the convenience factor weighs in transfer when defendant named "multiple party and non-party witnesses residing within the Northern District of California, while [plaintiff] has named only one employee who resides part-time in the Eastern District of Texas.").

### d.    The Northern District of California is easier for practical purposes

The fourth private interest factor is "practical problems that make trial of a case easy, expeditious, and inexpensive."  *Uniloc*, 2:17-cv-00258-JRG at 8 (citing *Volkswagen I*, 371 F.3d at 203).  "This factor concerns judicial economy."  *Godo*, 2017 WL 4076052 at *4.  This case is still in its early stages—no docket control order has been entered, nor has any discovery been conducted.  Transfer would not cause significant delay.

---

[23] Lenexa is approximately 440 miles from Marshall but travel time from Lenexa to Shreveport is 3 hours and 51 minutes while travel to San Francisco is 4 hours and 8 minutes.  *See* Bombach Decl., Exs. 20-22.
[24] Flights from Austin to Shreveport take 2 hours 45 minutes.  Bombach Decl., Ex. 23.  Flights from Austin to San Francisco take 3 hours 54 minutes.  Bombach Decl., Ex. 24.

The practical convenience for the witnesses of all defendants accused of infringing AGIS's patents favors transfer to the Northern District of California.  LGKER is a Korean corporation and must fly most of its witnesses from Korea (*see* 2:17-cv-00513-JRG, D.I. 46 at 22) and has witnesses within the Northern District of California.  *See* 2:17-cv-00513-JRG, D.I. 77 at 8.  Huawei must fly witnesses from China while most of its United States-based witnesses are in California.[25]  *See* 2:17-cv-00513-JRG, D.I. 36 at 12-13.  Most of ZTE (TX) Inc.'s ("ZTX") witnesses are in California.  *See* 2:17-cv-00517-JRG, D.I. 38 at 27.  Apple Inc.'s witnesses are located in the Northern District of California.  2:17-cv-00516-JRG, D.I. 53 at 10-11.  In contrast, AGIS can only identify a single witness, one who is unlikely to have any relevant documents, in the Eastern District of Texas.  Taken as a whole, the weight of convenience for all these witnesses heavily favors transferring all cases to the Northern District of California.[26]

### 4.    As a whole, the public interest factors favor transfer to the Northern District of California

This district also looks at public factors: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law."  *Id.* at 9 (citing *Volkswagen I*, 371 F.3d at 203).  The local interests favor transfer to the Northern District of California, while the remaining factors are neutral.

The local interest factor strongly favors transfer.  The Northern District of California has

---

[25] Huawei Device USA Inc. has no employees with relevant information in the Eastern District of Texas.  2:17-cv-00513-JRG, D.I. 36 at 1-2.

[26] This court disfavors transfer when parallel proceedings are created (*see ColorQuick, L.L.C. v. Vistaprint Ltd.*, No. 6:09-CV-323, 2010 WL 5136050, at *8 (E.D. Tex. Jul. 22, 2010)) but this is not the case here, as all cases should be transferred.  All related cases are in their early stages and each defendant has described why the Northern District of California is clearly more convenient. *See* 2:17-cv-00513-JRG, D.I. 36; 2:17-cv-00513-JRG, D.I. 46; 2:17-cv-00516-JRG, D.I. 53.

a strong interest in this case because Google's apps are central—the heart of—this case, and because most of the relevant witnesses reside and work in the Bay Area.  *In re Hoffmann-LaRoche, Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).  The case is attacking Google's software, and Google's home jurisdiction has the strongest interest in resolving this dispute.  On the other hand, this case does not raise issues of local significance for the Eastern District of Texas because AGIS's presence in Texas is "recent, ephemeral, and an artifact of litigation."  *See Klaustech, Inc. v. AdMob, Inc.*, 6:10-cv-39, 2010 WL 11484498 at *4 (2010); *see also In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (discounting an entity's location created "in anticipation of litigation and for the likely purpose of making that forum appear convenient").

The rest of the public interest factors are neutral.  Both districts "are familiar with patent law, and thus this factor is neutral."  *Wireless Recognition Techs. LLC v. A9.com, Inc.*, 2:10-CV-364-JRG, 2012 WL 506669 at *6 (E.D. Tex. 2012).  The Northern District of California and the Eastern District of Texas offer comparable timelines (*see* 2:17-cv-00513-JRG, D.I. 38-6) and there appears to be no unique conflict of law issues.

V.     **Conclusion**

For the foregoing reasons, the court should dismiss HTC Corp. under Fed. R. Civ. P. 12(b)(2) or, in the alternative, transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated:  January 22, 2018

Respectfully submitted,

*/s/ Miguel J. Bombach*

Matthew C. Bernstein, (Lead Attorney)
CA State Bar No. 199240
mbernstein@perkinscoie.com
Miguel J. Bombach
CA State Bar No. 274287
mbombach@perkinscoie.com
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA  92130-2594
Tel:  (858) 720-5700
Fax: (858) 720-5799

Eric Findlay
State Bar No. 00789886
efindlay@findlaycraft.com
Brian Craft
State Bar No. 04972020
bcraft@findlaycraft.com
FINDLAY CRAFT, P.C.
102 N. College Ave., Suite 900
Tyler,  TX 75702
Tel: (903) 534-1100
Fax: (903) 534-1137

ATTORNEYS FOR DEFENDANT
HTC CORPORATION

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 22, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Miguel J. Bombach*
Miguel J. Bombach

## CERTIFICATE OF SERVICE

The parties complied with Local Rule CV-7(h). On January 22, 2018, Defendant's counsel conferred with Plaintiff's counsel via telephone, and Plaintiff's counsel confirmed that Plaintiff opposes this motion.

*/s/ Miguel J. Bombach*
Miguel J. Bombach