# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| AGIS SOFTWARE DEVELOPMENT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Case No. 2:17-cv-514-JRG |
| v. | § | (Lead Case) |
| | § | |
| HTC CORPORATION, | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

**PLAINTIFF AGIS SOFTWARE DEVELOPMENT, LLC'S OPPOSITION TO DEFENDANT HTC CORPORATION'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2), OR, IN THE ALTERNATIVE, TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A) TO THE NORTHERN DISTRICT OF CALIFORNIA (DKT. 29)**

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................. 1

II.      BACKGROUND ................................................................................................... 3

     A.      AGIS Software Development, LLC, AGIS, Inc., and AGIS Holdings, LLC ............................................................................................................... 3

     B.      AGIS's Witnesses ..................................................................................... 4

     C.      HTC's Contact with the District ............................................................... 5

     D.      HTC'S Witnesses ...................................................................................... 6

     E.      Other Non-Party Witnesses ...................................................................... 6

     F.      Other Related Co-Pending Litigations in This Court ............................... 7

III.      LEGAL STANDARDS ........................................................................................ 8

     A.      Personal Jurisdiction ................................................................................ 8

     B.      Transfer Under Section 1404(a) ............................................................... 9

IV.      ARGUMENT .................................................................................................... 11

     A.      HTC is Subject to Personal Jurisdiction Under the Stream of Commerce Theory .................................................................................. 11

     B.      AGIS is Entitled to Jurisdictional Discovery ........................................ 17

     C.      Transfer to the Northern District of California Is Not Warranted ........ 18

         1.      Each of the Private Interest Factors Weighs Against Transfer ................ 18

             (a)      Convenience of the Parties and Witnesses and Cost of Attendance for Willing Witnesses Weigh Against Transfer .......... 18

             (b)      Access to Sources of Proof Does Not Favor Transfer .................... 24

             (c)      Availability of Compulsory Process Does Not Favor Transfer ........................................................................................ 27

             (d)      Judicial Economy Weighs Against Transfer ................................... 27

         2.      The Public Interest Factors Weigh Against Transfer ............................... 29

i

  (a) This District's Strong Localized Interest in this Dispute
    Weighs Against Transfer................................................................... 29

  (b) Court Congestion Weighs Against Transfer ................................... 30

V.  CONCLUSION............................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3G Licensing, SA v. HTC Corp.*,
 No. 17-83-LPS-CJB, Dkt. 73 (D. Del. 2017).....................................................................13, 14

*Abatix Corp. v. Capra*,
 No. 2:07-cv-541, 2008 WL 4427285 (E.D. Tex. Sept. 24, 2008).....................................18, 23

*Aloft Media, LLC v. Adobe Sys.*,
 No. 6:07–CV–355, 2008 WL 819956 (E.D. Tex. Mar. 25, 2008).................................. *passim*

*In re Apple, Inc.*,
 456 Fed. App'x 907 (Fed. Cir. 2012).......................................................................................17

*Asahi Metal Ind. Co., Ltd. v. Chang Shin Rubber Ind. Co., Ltd.*,
 480 U.S. 102 (1987)..................................................................................................................13

*ATEN Int'l Co. v. Emine Tech. Co.*,
 261 F.R.D. 112 (E.D. Tex. 2009)........................................................................7, 11, 13, 15

*Autobytel, Inc. v. Insweb Corp.*,
 No. 2:07-CV-524, 2009 WL 901482 (E.D. Tex. Mar. 31, 2009) .............................................7

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
 21 F.3d 1558 (Fed. Cir. 1994)..................................................................................... *passim*

*Blue Spike, LLC v. Huawei Technologies Co., Ltd.*,
 No. 6:13-cv-00679, 2016 WL 3951665 (E.D. Tex. June 6, 2016) .........................................14

*BNSF Ry. Co. v. OOCL (USA), Inc.*,
 667 F. Supp. 2d 703 (N.D. Tex. 2009) ...................................................................................26

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
 444 F.3d 1356 (Fed. Cir. 2006)................................................................................................8

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985)..............................................................................................................8, 15

*Catalina Mktg. Corp. v. LDM Grp. LLC*,
 No. 2:07-cv-477, 2008 WL 4239758 (E.D. Tex. Sept. 9, 2008)..............................................18

*Cell & Network Selection, LLC v. AT & T Mobility LLC*,
 No. 6:11-CV-706 LED-JDL, 2013 WL 1855972, at *6 (E.D. Tex. Apr. 29,
 2013) ........................................................................................................................................17

*Centre One v. Vonage Holdings Corp.*,
No. 6:08-cv-467, 2009 WL 2461003 (E.D. Tex. Aug. 10, 2009)............................................26

*ColorQuick, L.L.C. v. Vistaprint Ltd.*,
No. 6:09-cv-323, 2010 WL 5136050 (E.D. Tex. Jul. 22, 2010).............................................27

*Continental Grain Co. v. The FBL-585*,
364 U.S. 19 (1960)................................................................................................................27

*Core Wireless Licensing, S.A.R.L v. Apple, Inc.*,
No. 6:12-cv-100, 2013 WL 682849 (E.D. Tex. Feb. 22, 2013)........................................18, 27

*In re D–Link Corp.*,
183 Fed. App'x 967 (Fed. Cir. 2006)....................................................................................22

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)............................................................................................29

*Genetic Implant Sys., Inc. v. Core–Vent Corp.*,
123 F.3d 1455 (Fed. Cir. 1997)..............................................................................................7

*Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*,
No. 2:17-cv-100, 2017 WL 4076052 (E.D. Tex. Sept. 14, 2017)..........................................24

*GSK Tech., Inc. v. Schneider Elec.*, S.A.,
No. 6:06–cv–361, 2007 WL 788343 (E.D. Tex. Mar. 14, 2007)......................................10, 16

*Gulf Oil Corp. v. Gilbert*,
330 U.S. 501 (1947), *superseded by statute on other grounds*..................................................9

*In re Horseshoe Entm't*,
337 F.3d 429 (5th Cir. 2003) ................................................................................................10

*HTC
Corp.*, No. 2:17-cv-00514............................................................................................6

*Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*,
No. 5:08-CV-26, 2009 WL 1025467 (E.D. Tex. Mar. 26, 2009) ............................................8

*IDQ Operating, Inc. v. Aerospace Commc'ns Holdings Co.*,
No. 6:15-CV-781, 2016 WL 5349488 (E.D. Tex. Jun. 10, 2016), *report and
recommendation adopted sub nom. Armor All/STP Prod. Co. v. Aerospace
Commc'ns Holdings Co., Ltd*, No. 6:15-CV-781, 2016 WL 5338715 (E.D.
Tex. Sept. 23, 2016) ...................................................................................... *passim*

*Innovative Display Techs. LLC v. BMW of N. Am., LLC*,
No. 2:14-CV-00106-JRG, 2015 WL 1459188 (E.D. Tex. Mar. 31, 2015)............................27

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
326 U.S. 310 (1945)..............................................................................................7

*Invitrogen Corp., v. Gen. Elec. Co.*,
No. 6:08-cv-112, 2009 WL 331891 (E.D. Tex. Feb. 2, 2009)..................................23

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*,
No. 6:08-cv-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008) ...........................26

*Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co.*,
No. Civ. A. 2:05-cv-185, 2005 WL 3299718 (E.D. Tex. 2005), at *8 .............................14, 16

*Johnson v. Armour-Eckrich Meats*, LLC,
No. 2:07 CV 498, 2008 WL 4239565 (E.D. Tex. Sept. 9, 2008) ...........................18

*KlausTech, Inc. v. AdMob, Inc.*,
No. 6:10-cv-39, 2010 WL 11488898 (E.D. Tex. Nov. 30, 2010)...........................28

*Mangosoft Intellectual Property, Inc. v. Skype Techs. SA*,
No. 2:06-CV-390, 2007 WL 2008899, at *2 (E.D. Tex. July 5, 2007) ..................21

*Mears Techs., Inc. v. Finisar Corp.*,
No. 2:13-cv-376-JRG, 2014 WL 1652603 (E.D. Tex. April 24, 2014).............................9, 28

*MHL Tek, LLC v. Nissan Motor Co.*,
No. 2:07-cv-289, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009)..................................19, 20, 22

*MHL Tek, LLC v. Nissan Motor Co.*,
No. 2:07-cv-289 (TJW), 2008 WL 910012 (E.D. Tex. Apr. 2, 2008) ........................... *passim*

*Mohamed v. Volvo Corp.*,
90 F. Supp. 2d 757 (E.D. Tex. 2000).................................................................18, 23

*Network-1 Sec. Solutions, Inc. v. D-Link Corp.*,
433 F. Supp. 2d 795 (E.D. Tex. 2006), *mandamus denied*, 183 Fed. App'x 967
(Fed. Cir. 2006)..................................................................................................22

*Norman IP Holdings, LLC v. Casio Computer Co., Ltd.*,
No. 6:09-cv-270, 2010 WL 4238879 (E.D. Tex. Oct. 27, 2010, at *6 ..................28

*Odom v. Microsoft Corp.*,
596 F. Supp. 2d 995 (E.D. Tex. 2009)............................................................24, 25

*Oppenheimer Fund Inc. v. Sanders*,
437 U.S. 340 (1978)............................................................................................16

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
119 F.3d 1559 (Fed. Cir. 1997)..........................................................................10

*RPost Holdings, Inc. v. StrongMail Sys., Inc.*, No. 2:12-CV-515-JRG,
  2013 WL 4495119 (E.D. Tex. Aug. 19, 2013) ......................................................................26

*Sanger Ins. Agency, Inc. v. HUB Int'l, Ltd.*,
  No. 2:13-cv-528, 2014 WL 5389936 ...................................................................18, 19, 21, 25

*Silent Drive, Inc. v. Strong Indus.*,
  326 F.3d 1194 (Fed. Cir. 2003).............................................................................................7

*Solocron Educ., LLC v. Healthstream, Inc.*,
  No. 2:16-cv-16, 2016 WL 9137458 (E.D. Tex. Jun. 7, 2016) (Gilstrap, J.) ...........................16

*Stragent, LLC v. Pioneer Elecs. (USA) Inc.*,
  No. 6:11CV278 LED-JDL, 2013 WL 8467476, at *6 (E.D. Tex. May 8, 2013) ...................17

*Thurmond v. Compaq Computer Corp.*,
  No. 1:99-CV-0711(TH), 2000 WL 33795090 (E.D. Tex. Mar. 1, 2000) .........................16, 28

*U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co.*,
  No. 6:12-CV-398 MHS-JDL, 2013 WL 1363613, at *6 (E.D. Tex. Apr. 2,
  2013) ..................................................................................................................................17

*Uniloc USA, Inc. v. Apple Inc.*,
  No. 2:17-cv-00258, Dkt. 104 at 18-19 (E.D. Tex. 2017).........................................................23

*Uniloc USA, Inc. v. Distinctive Dev. Ltd.*,
  964 F. Supp. 2d 638, 646 (E.D. Tex. 2013) ...........................................................................24

*VCode Holdings, Inc. v. Cognex Corp.*,
  No. 2:07-cv-138, 2007 WL 2238054 (E.D. Tex. Aug. 3, 2007)............................................24

*Vertical Computer Sys., Inc. v. LG Elecs. MobileComm U.S.A., Inc.*,
  No. 2:10-cv-490-JRG, 2013 WL 2241947 (E.D. Tex. May 21, 2013)...................................29

*In re Vistaprint Ltd.*,
  628 F.3d 1345 (Fed. Cir. 2010)............................................................................................26

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...................................................................................9, 10, 20

*In re Volkswagen AG*,
  371 F.3d at 204–05 ...........................................................................................................21

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) (*en banc*) ..................................................................................9

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009)............................................................................................27

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*,
    517 F.3d 235 (5th Cir. 2008) ................................................................................17

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980).............................................................................................15

*In re Zimmer Holdings, Inc.*,
    609 F.3d 1378 (Fed. Cir. 2010)............................................................................28

*Zoch v. Daimler, AG*,
    No. 6:16-cv-00057, 2017 WL 2903264 (E.D. Tex. May 16, 2017) .......................14

**Statutes**

28 U.S.C. § 1404(a) .........................................................................................8, 20, 27

**Other Authorities**

15 Wright, Miller & Cooper, Fed. Practice and Proc. § 3849 (3d ed. 2009) ...................................9

Plaintiff AGIS Software Development, LLC ("AGIS"), by and through its undersigned counsel, hereby submits this response in opposition to HTC Corporation's ("HTC") Motion to Dismiss for lack of personal jurisdiction; or in the alternative, to transfer for convenience to the Northern District of California (Dkt. 29) (the "Motion").

## I.      INTRODUCTION

HTC has failed to show that it is not subject to this Court's personal jurisdiction or that convenience justifies transferring this case to the Northern District of California.  HTC argues that it cannot be subject to personal jurisdiction because it does not directly market, offer, or sell the Accused Products in Texas, claiming instead that its Washington subsidiary, HTC America, Inc. ("HTC America"), is responsible for these acts.  However, it is well-established that because HTC intentionally places the Accused Products into the stream of commerce with knowledge that they will eventually be sold in Texas, HTC is, in fact, subject to the personal jurisdiction of this Court and its motion to dismiss should be denied.  HTC admits that it established a distribution channel with HTC America through which HTC America acquires the Accused Products from HTC and imports them into the United States and sells them to third-party distributors and carriers in the United States. Dkt. 29-2, at ¶¶ 2, 4.  HTC does not and cannot realistically dispute that it is aware that, through HTC America's distribution, the Accused Products will be sold in Texas.

HTC's alternative request for transfer to the Northern District of California should also be denied.  AGIS has no presence in or connection to California, and HTC is a foreign company with admittedly no United States office.  As HTC admits, it is a Taiwanese corporation with a principal place of business in New Taipei City, Taiwan that maintains all operations outside of the United States.  None of HTC's documents and records regarding engineering, marketing and finance are in the proposed transferee district.  Likewise, HTC offers no evidence that its key

witnesses are located in the Northern District of California.  On this motion, HTC submits only a declaration from David Wiggins, an HTC America employee responsible for patent litigation, who states that two employees of HTC America are based in the U.S. may have relevant knowledge, and neither of those employees are located in the Northern District of California. Dkt. 29-2 at ¶¶ 3.

HTC also relies on the location and convenience of non-party Google, asserting that relevant information from Google regarding the Accused Products is located in or near Google's headquarters in Northern California.  While AGIS has accused functionality related to Google's Android Operating System, much of that information is publicly available through either open source code or public application programming interfaces ("API").  In this case, AGIS accuses HTC's mobile phone devices of infringing the Patents-in-Suit—not Google's devices.  Even if Google possesses relevant documents and employs individuals who have knowledge about the Accused Products and functionality, HTC has not demonstrated why any specific Google witness or document would necessitate transfer to the Northern District of California.

In contrast, AGIS's witnesses and many of the expected non-party witnesses would be severely inconvenienced if this case were transferred to the Northern District of California. AGIS has significant ties to this District.  AGIS and its related companies have offices in Marshall and Austin, Texas, and AGIS's founder, CEO and named inventor, Malcom "Cap" Beyer, has long-standing business and personal ties to this District and to the State of Texas, as do several other employees of AGIS's sister company, AGIS, Inc.  AGIS, Inc. maintains an office in Austin, Texas, where an AGIS witness lives and works.  Moreover, AGIS regularly works with a consultant in Allen, Texas who is likely to be a key witness regarding software development for products related to the Patents-in-Suit.  All of AGIS's other key fact witnesses

are located in either Jupiter, Florida or Lenexa, Kansas, which are both substantially closer to the

courthouse in Marshall, Texas than to the Northern District of California, including Mr. Beyer.

Finally, because this case has been pending for nearly six months and is already well into

discovery, and because closely-related suits are also being litigated in this District, judicial

economy weighs against transfer.  For all of these reasons and those stated in more detail below,

HTC's Motion should be denied in its entirety.

## II.     BACKGROUND

### A.     AGIS Software Development, LLC, AGIS, Inc., and AGIS Holdings, LLC

AGIS, Inc. was founded by former U.S. Marine Cap Beyer in 2004.  Declaration of

Malcolm K. Beyer ("Beyer Decl.") attached hereto as Exhibit A ¶ 4.  AGIS, Inc.'s primary

business has revolved around offering the "LifeRing" solution which includes software and

servers that enable mobile devices to securely establish ad hoc digital networks.  *Id.* ¶ 12.

LifeRing has been sold to military, defense, first-responder, and private industry customers since

2004.  *Id.*  AGIS, Inc. also offers a smartphone-based emergency broadcast and response

command control system for first responders called "ASSIST."  *Id.*

In 2017, Mr. Beyer and the other AGIS, Inc. shareholders formed AGIS Holdings,

Incorporated ("AGIS Holdings"), a Florida corporation.  *Id.* ¶ 7.  AGIS Holdings consists of two

subsidiaries, AGIS, Inc. and Plaintiff, which is a Texas limited liability company.  *Id.*  AGIS

holds the rights, by assignment, to each of the Patents-in-Suit and licenses its patent portfolio to

AGIS, Inc.  AGIS's principal place of business is located at 100 W. Houston Street, Marshall,

Texas.  *Id.* ¶ 9.  AGIS, Inc. has offices in Lenexa, Kansas, Jupiter, Florida, and Austin, Texas.

*Id.* ¶ 10.  All of AGIS and AGIS, Inc.'s employees with the exception of one are located

significantly closer to this District than the Northern District of California. *See id.* ¶¶ 4-6, 10-11, 14-20.

### B.     AGIS's Witnesses

The witnesses AGIS expects to rely on are located in or much closer to this District than to the Northern District of California.  Mr. Beyer, who is AGIS's CEO, will be one of AGIS's primary witnesses.  Beyer Decl. ¶ 1.  Mr. Beyer lives in Jupiter, Florida, approximately 940 miles from the courthouse in Marshall, and 2,560 miles from the courthouse in California.  *Id.* ¶ 5; Rubino Decl. ¶ 2.  Mr. Beyer possesses highly relevant knowledge regarding conception and reduction to practice of the Patents-in-Suit and has longstanding ties to this District.  Beyer Decl. ¶¶ 1-5.  Mr. Beyer's family has owned over 2,500 acres of land in Bowie County since 1867 and he has personally owned 412 acres of land in Bowie County since 2001.  *Id.* ¶ 22.

David Sietsema is expected to be another key fact witness in this case.  Mr. Sietsema has worked for AGIS, Inc. and its related companies for more than 10 years.  *Id*. ¶ 17.  His responsibilities include overseeing contracts and licenses for AGIS and its related entities, as well as ensuring contractual compliance related to intellectual property rights.  *Id.*  Mr. Sietsema lives and works in Austin, Texas, 1,200 miles closer to the courthouse in Marshall than the courthouse in the Northern District of California.  *Id.*; Rubino Decl. ¶ 2.

Sandel Blackwell is expected to be another key witness for AGIS.  Mr. Blackwell is the President of AGIS, Inc. and a Director of AGIS, Inc. and AGIS.  Beyer Decl. ¶ 18.
Mr. Blackwell manages the development of the software included in the LifeRing and Assist solutions.  *Id.*  Mr. Blackwell works at AGIS, Inc.'s Lenexa, Kansas office, as well at its office in Jupiter, Florida.  *Id.*  Mr. Blackwell maintains regular communication with AGIS, Inc.'s programmers and software developers in Florida, Kansas, and Texas and regularly works with an

AGIS consultant in this District.  *Id.*  Mr. Blackwell's office in Lenexa, Kansas is 444 miles from

Marshall and 1,498 miles to the Northern District of California.  Rubino Decl. ¶ 2.

Mr. Blackwell has close personal ties to Texas and travels here frequently.  Beyer Decl. ¶ 18.

      An important non-party witness for AGIS will be Eric Armstrong, a former AGIS, Inc.

employee, who is now a full-time consultant for AGIS and AGIS, Inc.  *Id.* ¶¶ 15-16.

Mr. Armstrong is responsible for designing and developing client-side and server-side software

for the LifeRing and Assist solutions.  *Id.* ¶ 16.  Mr. Armstrong lives and works in Allen, Texas

in this District.  *Id.* ¶ 15.  Mr. Armstrong works closely with Mr. Blackwell and AGIS, Inc.

employees, such as Rebecca Clarke, regarding software development and quality assurance.  *Id.*

¶ 16.  Mr. Armstrong is expected to have documents relevant to this action in his office in this

District, including e-mails regarding the development of software and marketing which are

stored on his computer.  *Id.*  Transfer to the Northern District of California will require

Mr. Armstrong to travel approximately 1,300 additional miles to testify at trial and will put him

beyond the subpoena power of the court.  *See* Rubino Decl. ¶ 2.  Another important non-party

witness for AGIS will be its technical expert, Joseph C. McAlexander, whose office is located at

101 Renner Trail # 350, Richardson, Texas which is located in this District.  *Id.* ¶ 5.  None of

AGIS's expected witnesses are located in the Northern District of California.

      **C.**    **HTC's Contact with the District**

      HTC admits that it has a close relationship with its U.S. subsidiary, HTC America.  See,

e.g., Dkt. 29-2 ¶ 2; Dkt. 29 at 5, 12, 13.  HTC admits that it manufactures products containing the

accused devices abroad, and that HTC America acquires the accused devices from HTC and

imports, markets, and sells them in the United States.  Dkt. 29-1 ¶ 2; Dkt. 29-2 ¶ 2; Dkt. 29 at 4,

5, 12, 13.  HTC America sells the products it receives from HTC to "third-party distributors and

carriers in the United States" who, in turn, sell those devices to end users throughout the nation. Dkt. 29-2 ¶ 4.  HTC America's nationwide distribution includes sales in Texas.  See Dkt. 29 at 13.  HTC cannot dispute that it places the Accused Products into the steam of commerce through a distribution channel it established with another HTC entity, with knowledge that, through HTC America's distribution, the accused devices will be sold nationwide, including in Texas.

### D.     HTC'S Witnesses

HTC admits that all of its employees and technical evidence are located outside the United States, primarily in Taiwan, and not in the Northern District of California.  Dkt. 29, at 4. While HTC states that its employees periodically visit Northern California to interface with Google regarding the engineering of HTC smartphones (Dkt. 29-1, at ¶ 6), it fails to identify how these employees are relevant to this action or state that these employees are foreseeable witnesses.  HTC also asserts that it has a U.S. subsidiary, HTC America, with a principal place of business in Seattle, Washington.  Dkt. 29, at 5.  HTC states that two HTC America employees, Nigel Newby-House and Andrew Pudduck, are foreseeable witnesses.  Dkt. 29-2, at ¶ 3.  These two witnesses are located in Seattle, Washington, and HTC does not state the relevant knowledge each is likely to have, nor does it describe their potential testimony that may be relevant to this case.  *See Id.*  HTC also states that its U.S. subsidiary, HTC America Innovation, Inc., is headquartered in Washington with a satellite facility located in San Francisco.  Dkt. 29-1, at ¶ 10. HTC does not name any foreseeable witnesses from HTC America Innovation, Inc.

### E.     Other Non-Party Witnesses

HTC also contends that potential non-party witnesses, such as Google, are located in and around the Northern District of California.  Dkt. 29, at 22.  However, HTC fails to identify how any evidence or testimony from Google witnesses will be relevant to this action.  In fact, Google

6

also maintains a large office location in Austin, Texas where it has long employed over 450 individuals.  Rubino Decl. ¶¶ 3-4.  If Google proves to be a relevant third party at all, Google's Austin, Texas employees would be likely to have relevant information because, according to a 2017 press release, Google's Austin employees work on product teams including "Android, G Suite, Google Play, people operations, finance, engineering, and marketing." *Id*.  Anticipated non-party witnesses from AT&T, Sprint, and Verizon, whom AGIS believes will provide key information about the value of the accused software, are also located closer to this District than to the Northern District of California. Rubino Decl. at ¶¶ 6-8.  AT&T's headquarters are located in Dallas; Sprint's headquarters are located in Overland, Kansas; and Verizon's headquarters are located in New York, each of which is substantially closer to this District than to the Northern District of California.  *Id*. at ¶ 6.

## F.     Other Related Co-Pending Litigations in This Court

AGIS asserts four patents against HTC: U.S. Patent Nos. 8,213,970 (the "'970 Patent"); 9,408,055 (the "'055 Patent"); 9,445, 251 (the "'251 Patent"); and 9,467,838 (the "'838 Patent") (collectively, "Patents-In-Suit").  This Court is currently presiding over five related patent infringement cases, including the instant case, involving the same plaintiff, the same Patents-in-Suit, the same underlying technology, and substantially identical claims (the "AGIS Texas Cases").[1]  To date, two of the AGIS Texas Cases, including this case, have been consolidated.[2]

---

[1] *AGIS Software Development LLC v. Apple, Inc.*, No. 2:17-cv-00516 (E.D. Tex. June 21, 2017); *AGIS Software Development LLC v. HTC Corp.*, No. 2:17-cv-00514 (E.D. Tex. June 21, 2017); *AGIS Software Development LLC v. ZTE Corp., et al.*, No. 2:17-cv-00517 (E.D. Tex. June 21, 2017); *AGIS Software Development LLC v. Huawei Device USA Inc., et al.*, No. 2:17-cv-00513 (E.D. Tex. June 21, 2017); and *AGIS Software Development LLC v. LG Electronics, Inc.*, No. 2:17-cv-00515 (E.D. Tex. June 21, 2017).

[2] *HTC Corp.*, No. 2:17-cv-00514 (Lead Case); *ZTE Corp., et al.*, No. 2:17-cv-00517 (Consolidated).

III.    **LEGAL STANDARDS**

A.    **Personal Jurisdiction**

Personal jurisdiction in patent infringement actions is governed by Federal Circuit law.

*See Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1200-01 (Fed. Cir. 2003).  On a motion to

dismiss, "a plaintiff only needs to make a *prima facie* showing that the defendant is subject to

personal jurisdiction, and the pleadings and affidavits are to be construed in the light most

favorable to the plaintiff."  *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 118 (E.D. Tex.

2009) (citing *Silent Drive*, 326 F.3d at 1201) (emphasis added).  Further, courts will resolve "all

conflicts between the facts contained in the parties' affidavits and other documentation" in the

plaintiff's favor.  *Id.*

To determine whether personal jurisdiction exists over an out-of-state defendant, the

Court must consider: "(1) whether a forum state's long-arm statute permits service of process,

and (2) whether the assertion of personal jurisdiction would violate due process."  *Autobytel, Inc.*

*v. Insweb Corp.*, No. 2:07-CV-524, 2009 WL 901482, at *1 (E.D. Tex. Mar. 31, 2009) (citing

*Genetic Implant Sys., Inc. v. Core–Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)).  Because

the Texas long-arm statute reaches "as far as the federal constitutional requirements of due

process will allow," the two inquiries collapse into a single inquiry of whether the exercise of

personal jurisdiction comports with federal due process.  *ATEN*, 261 F.R.D. at 118.

Due process is satisfied if (1) the defendant has established minimum contacts with the

forum state (*id.*); and (2) the exercise of jurisdiction over the defendant does not offend

"traditional notions of fair play and substantial justice."  *Autobytel,* 2009 WL 901482, at *1

(citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S.

310, 316 (1945)).  "Specific jurisdiction exists when the nonresident defendant has 'purposefully

8

directed' his activities at the residents of the forum, and the litigation results from alleged

injuries that 'arise from or relate to' those activities."  *Icon Health & Fitness, Inc. v. Horizon*

*Fitness, Inc.*, No. 5:08-CV-26, 2009 WL 1025467, at *3 (E.D. Tex. Mar. 26, 2009) (citing

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

An "independent basis" for personal jurisdiction is the "stream-of-commerce theory."

*Icon Health*, 2009 WL 1025467, at *4.  Under this theory, a defendant establishes sufficient

contacts with the forum by "deliver[ing] its products into the stream of commerce with the

expectation that they will be purchased by customers in the forum State."  *Id.* at *12; *see also*

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) ("The

forum State does not exceed its powers under the Due Process Clause if it asserts personal

jurisdiction over a corporation that delivers its products into the stream of commerce with the

expectation that they will be purchased by consumers in the forum State.").  In this context,

"[t]he distinction between specific and general jurisdiction is of little value."  *Icon Health*, 2009

WL 1025467, at *8.

Once the plaintiff makes a *prima facie* showing of minimum contacts, the defendant has

the burden to show that the exercise of jurisdiction would be "unreasonable," *i.e.* offend

"traditional notions of fair play and substantial justice."  *Breckenridge Pharm., Inc. v. Metabolite*

*Labs., Inc.*, 444 F.3d 1356, 1362 n.3 (Fed. Cir. 2006).

**B.**     **Transfer Under Section 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a).  When seeking a transfer of venue for convenience, "the movant bears the

burden to clearly demonstrate that a transfer is 'clearly more convenient' than the venue chosen

9

by the plaintiff." *Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-cv-376-JRG, 2014 WL 1652603, at *2 (E.D. Tex. April 24, 2014).  The defendant must do *more* than show that the transferee district is a clearly more convenient venue for *it* to defend against the plaintiff's claims; it must show that the transferee district would be "more convenient for *both* parties involved, non-party witnesses, expert witnesses, and in the interest of justice." *Aloft Media, LLC v. Adobe Sys.*, No. 6:07–CV–355, 2008 WL 819956, at *3 (E.D. Tex. Mar. 25, 2008) (emphasis added); 15 Wright, Miller & Cooper, Fed. Practice and Proc. § 3849 (3d ed. 2009) ("[S]ection 1404(a) refers to all of the parties to the action, which means that their frequently competing conveniences must be taken into account by the court.  Therefore, transfer will be refused if the effect of a change of venue would be merely to shift the inconvenience from one party to the other.").  If the defendant fails to make this showing, "the plaintiff's choice [of venue] must be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*"); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), *superseded by statute on other grounds*.

In conducting its analysis, the court first determines whether the suit could have been brought in the proposed transferee district.  *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  If the court answers that question affirmatively, it then evaluates certain private and public interest factors.  *Id.*  The private-interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make a trial case easy, expeditious, and inexpensive."  *Id.*  The public-interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the

forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of

conflicts of laws." *Id.*; *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) ("it is clear

under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be

considered" in a transfer of venue analysis).  Although not an enumerated factor,

"[c]onsideration of the interest of justice, which includes judicial economy, 'may be

determinative to a particular transfer motion, even if the convenience of the parties and witnesses

might call for a different result.'" *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559,

1565 (Fed. Cir. 1997) (citation omitted).

## IV.   ARGUMENT

By placing Accused Products that are eventually sold in Texas into the stream of

commerce, HTC is subject to personal jurisdiction here.  Moreover, HTC has failed to show that

transfer to the Northern District of California is warranted as a matter of convenience or in the

interest of justice.

### A.   HTC is Subject to Personal Jurisdiction Under the Stream of Commerce Theory

A *prima facie* case of purposeful entry into the Texas stream of commerce is established

by showing "[1] that the defendant's products were sold into a nationwide distribution network

and [2] that the products were available in Texas." *IDQ Operating, Inc. v. Aerospace Commc'ns*

*Holdings Co.*, No. 6:15-CV-781, 2016 WL 5349488, at *4 (E.D. Tex. Jun. 10, 2016), *report and*

*recommendation adopted sub nom. Armor All/STP Prod. Co. v. Aerospace Commc'ns Holdings*

*Co., Ltd*, No. 6:15-CV-781, 2016 WL 5338715 (E.D. Tex. Sept. 23, 2016) (Gilstrap, J.); *accord*

*GSK Tech., Inc. v. Schneider Elec.*, S.A., No. 6:06–cv–361, 2007 WL 788343 at *2 (E.D. Tex.

Mar. 14, 2007).  Under the strictest version of the test, the "purposeful" element is satisfied by a

showing that the defendant "knew, or reasonably could have foreseen, that a termination point of the channel was [the forum state]." *Beverly Hills Fan*, 21 F.3d at 1564.  Where the products are consistently available for sale in Texas, and the defendant's relationships with the entities in the distribution network are ongoing, the court can presume this element is satisfied.  *Id.*  (evidence that the accused products are available for sale at retailers in the forum state "reflect[s] an ongoing relationship with the [] retailer and customers [in Texas]," and "[f]rom these ongoing relationships, it can be presumed that the distribution channel . . . was intentionally established, and that the defendant "knew, or reasonably could have foreseen, that a termination point of the channel was [the forum state]"); *see also ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 119 (E.D. Tex. 2009) (evidence that the accused products are consistently available at retail stores in Texas "leads to a very strong conclusion that [the defendant] knew or should have known that its products consistently are marketed and sold in Texas").  Moreover, selling products to an entity that distributes products nationwide "is a strong indication that [the defendant] intends to direct its products nationwide," including to Texas.  *IDQ Operating*, 2016 WL 5349488, at *4.  As described more fully below, HTC's conduct satisfies even the strictest version of the stream of commerce theory.

This Court's analysis in *MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-cv-289 (TJW), 2008 WL 910012, at *1 (E.D. Tex. Apr. 2, 2008), is instructive.  In *MHL Tek*, a foreign defendant moved to dismiss for lack of personal jurisdiction, arguing in its motion that it manufactures vehicles containing accused products abroad, sells the vehicles to a related foreign entity, and then a related U.S. entity purchases the vehicles for distribution in the United States.  *Id.*  The defendant did not dispute that the vehicles were available for sale in Texas.  *See id.*  The defendant nonetheless argued that jurisdiction was improper because the U.S. entity, not the

12

defendant, "directs and controls the distribution of [accused products] in the US, including into Texas." *Id.* This Court disagreed, concluding that jurisdiction *was* proper under the stream of commerce theory because the defendant's continuous relationship with the two related entities amounted to "an established distribution chain," the defendant admitted that it places the accused products into that established chain, and the defendant was aware that its products would eventually be distributed nationwide. *Id.* The Court also held that because the defendant sold its products into an established distribution channel with other related entities, and it "knows the likely destination of its products [because] . . . [it] sells its products to [an entity in the chain] knowing that [the U.S. entity] will purchase some of those vehicles for distribution in the [U.S., and the U.S. entity] then distributes [the accused] vehicles throughout the United States, including Texas . . . [the defendant] should reasonably anticipate being hauled into court in Texas." *Id.*

This case is virtually identical to *MHL Tek*. Like the defendant in *MHL Tek*, HTC admits that it manufactures products containing the accused devices abroad and that HTC America acquires the accused devices from HTC and imports, markets, and sells them to third-party distributors and carriers in the United States. Dkt. 29-2 ¶ 2; Dkt. 29 at 5, 12, 13. In HTC's 2016 Annual Report, HTC repeatedly admits that its intent and purpose is to serve the U.S. market— reporting that "HTC maintains a presence in all key markets, including the United States" (Ex. 8 to Rubino Decl., at 30) and its "products are distributed across [] America[] . . . primarily through major carriers and local retail channels" (*id.* at 146). Further, HTC does not dispute that HTC's nationwide distribution includes sales in Texas. *See* Dkt. 29 at 12, 13. Just like in *MHL Tek*, these admissions are sufficient to show that HTC places the Accused Products into the steam of commerce through a distribution channel it established with HTC America, with

13

knowledge that, through HTC America's distribution, the accused devices will be sold

nationwide, including in Texas.  *See MHL Tek*, 2008 WL 910012, at *1; Dkt. 29 at 13 ("HTC

Corp. expects its phones to sell in the United States, generally").[3]  These facts strongly indicate

that HTC *intended* to direct its products nationwide, including to Texas.  *IDQ Operating*, 2016

WL 5349488, at *4; *see also ATEN*, 261 F.R.D. at 119 (jurisdiction proper over foreign

manufacturer despite argument that it sold its products to a foreign shipping company, it had no

knowledge of the final destination of its products, and did not specifically intend to direct its

products to Texas, because the defendant's continuous sales to the foreign entity, which

distributed nationwide, strongly indicate that it intends to direct its products nationwide).

Accordingly, exercising personal jurisdiction over HTC is proper.  *Beverly Hills Fan,* 21 F.3d at

1564; *MHL Tek*, 2008 WL 910012, at *1; *IDQ Operating*, 2016 WL 5349488, at *4; *ATEN*, 261

F.R.D. at 120; *see also Asahi Metal Ind. Co., Ltd. v. Chang Shin Rubber Ind. Co., Ltd.*, 480 U.S.

102, 117 (1987) (noting that jurisdiction is proper when the flow of products into the forum is

"regular and anticipated" and more than "unpredictable currents or eddies").

　　　HTC's misguided attempt to distinguish *3G Licensing, SA v. HTC Corp.*, No. 17-83-LPS-

CJB, Dkt. 73 (D. Del. 2017), a case in which the District of Delaware determined it had personal

jurisdiction over HTC based on almost identical facts (Dkt. 29 at 14 n.13; Dkt. 29-28)

demonstrates HTC's fundamental misunderstanding of the stream of commerce theory.  In *3G

Licensing*, the court held that jurisdiction was proper as to HTC because HTC intended to serve

---

[3] Even if HTC had not admitted knowledge that its products are sold in Texas—which it has—it has not denied that
the relationships between HTC, HTC America, and the national mobile phone carriers and distributors in Texas are
ongoing.  Based on these ongoing relationships, the Court can presume that the distribution channel was
intentionally established and that HTC knows, or reasonably can foresee, that a termination point of the channel is
Texas.  *See Beverly Hills Fan*, 21 F.3d at 1564.

the United States market based on its statements in its annual report that HTC maintains a

presence in and distributes its products throughout the United States with the understanding and

expectation that its products will be sold in the United States, including in the district of

Delaware.  Dkt. 29-28 at 4-5.  Here, HTC places the Accused Products into the stream of

commerce through a distribution channel it established with its wholly owned subsidiary, with

the knowledge and expectation that, through HTC's distribution, the Accused Products would be

sold nationwide, including Texas.

       HTC's arguments that jurisdiction is improper because it does not specifically target

Texas, that it does not have distribution agreements in or requiring distribution in Texas, and that

it does not control the actions of third party distributors and carriers (Dkt. 29 at 13) are

misguided.  None of the connections with Texas listed by HTC (*id.*) are required to establish

personal jurisdiction over HTC under the stream of commerce theory.  *See MHL Tek*, 2008 WL

910012, at *1.[4]  Rather, jurisdiction is proper because, as HTC admits, it sells its products,

including the accused devices, to HTC America, with the knowledge that HTC America imports,

markets, and sells those products nationwide in the United States (Dkt. 29-2 ¶ 2; Dkt. 29 at 5, 12,

13), including in Texas (*see* Dkt. 29 at 13).  This is sufficient to establish a *prima facie* case of

purposeful entry into the Texas stream of commerce by HTC.  *See Jacobs Chuck Mfg. Co. v.*

*Shandong Weida Mach. Co.*, No. Civ. A. 2:05-cv-185, 2005 WL 3299718 (E.D. Tex. 2005), at

---

[4] The cases cited by HTC are inapposite.  In *Blue Spike, LLC v. Huawei Technologies Co., Ltd.*, No. 6:13-cv-00679, 2016 WL 3951665 at *2 (E.D. Tex. June 6, 2016) the court determined that it did not have jurisdiction under the stream of commerce test over a foreign defendant because, unlike here, the defendant in that case sold its products to resellers outside of the U.S. and the defendant had no knowledge that the resellers offered the defendants' products to customers in the United States.  Similarly, in *Zoch v. Daimler, AG*, No. 6:16-cv-00057, 2017 WL 2903264 at *6 (E.D. Tex. May 16, 2017) the court determined that the stream of commerce test was not satisfied where the defendant manufactured and sold automobile components in Germany with no knowledge that the components would be sold or used in Texas.  This is not the case for HTC who established a distribution chain for the purpose and expectation of selling its products in the United States, including in this District.

15

*8 (exercising jurisdiction over manufacturer, despite evidence that it had no employees, offices, or assets in Texas and did not pay taxes or register to do business there, because the accused products were incorporated into drills that were exclusively sold in the United States, and therefore, the manufacturer "should reasonably expect drills containing the chuck will be sold in the United States and Texas"); *see also IDQ Operating*, 2016 WL 5349488, at *4; *MHL Tek*, 2008 WL 910012, at *1; *ATEN*, 261 F.R.D. at 119.[5]

Finally, HTC has failed to present a "compelling case" that the exercise of jurisdiction over HTC would be unreasonable.  *See Beverly Hills Fan*, 21 F.3d at 1568 (*citing Burger King*, 471 U.S. at 477).  Where, like here, "the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the efforts of the [defendant] to serve, directly or *indirectly*, the market for its product . . ., it is *not* unreasonable to subject [the defendant] to suit."  *Id.* at 1566 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)) (emphasis added); *see also MHL Tek*, 2008 WL 910012, at *1 (finding jurisdiction reasonable over the defendant based on almost identical admissions).

Moreover, cases in which the exercise of personal jurisdiction is held to be "unreasonable" are generally "limited to the rare situations in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."  *Beverly Hills Fan*, 21 F.3d at 1568.  HTC has not shown—and cannot show—that this is one of those

---

[5] HTC's argument that activities of its subsidiaries cannot be imputed to HTC to establish jurisdiction (Dkt. 29 at 12) is misguided.  Imputation is not relevant or required here because, as shown, jurisdiction is established under the stream of commerce theory because HTC admits that it places the Accused Products into the stream of commerce with knowledge or a reasonable expectation that its products will be sold nationwide, including in Texas.  *See Beverly Hills Fan*, 21 F.3d at 1564; *IDQ Operating,* 2016 WL 5349488, at *4; *MHL Tek*, 2008 WL 910012, at *1; *ATEN*, 261 F.R.D. at 119.

rare cases.  AGIS, a Texas entity with its principal place of business in Texas (Beyer Decl. ¶¶ 7, 9, 22), has a strong interest in having its injuries remedied in its home state.  *Jacobs Chuck Mfg. Co.*, 2005 WL 3299718, at *8.  Texas also has a significant interest in adjudicating this dispute because it has a "significant interest in preventing patent infringement within its borders" and an interest in "furthering commerce and scientific development, especially within its technology sector, which is promoted by patent laws."  *IDQ Operating,* 2016 WL 5349488, at *5. Additionally, residents of "the Eastern District of Texas have an interest in adjudicating a dispute brought by one of its own residents."  *Thurmond v. Compaq Computer Corp.*, No. 1:99-CV-0711(TH), 2000 WL 33795090, at *13 (E.D. Tex. Mar. 1, 2000) (emphasis omitted).  Thus, the exercise of jurisdiction over HTC is not unreasonable.  *See Beverly Hills Fan*, 21 F.3d at 1568 ("We conclude that this is not one of those rare cases.  [The forum's] interests are significant [because it] has an interest in discouraging injuries that occur within the state . . . [which] extends to design patent infringement actions such as the one here.").  Accordingly, HTC's motion to dismiss for lack of personal jurisdiction should be denied.[6]

## B.     AGIS is Entitled to Jurisdictional Discovery

This District has personal jurisdiction over HTC.  In the event that the Court disagrees, AGIS requests that it be permitted to conduct jurisdiction-related discovery of HTC prior to a determination on the instant motion.  *See Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain

---

[6] *See MHL Tek*, 2008 WL 910012, at *1; *GSK Technologies, Inc. v. Schneider Elec., S.A.*, No. 6:06-cv-361, 2007 WL 788343, at *2 (E.D. Tex. Mar. 14, 2007) (exercising jurisdiction over manufacturer based on evidence that products were sold into a nationwide distribution network and that the products "are sold and were bought in a well-known home improvement store in the Eastern District of Texas"); *see also Solocron Educ., LLC v. Healthstream, Inc.*, No. 2:16-cv-16, 2016 WL 9137458, at *4 (E.D. Tex. Jun. 7, 2016) (Gilstrap, J.) ("By availing itself to the benefits of selling the accused product for use within this District, [defendant] has availed itself to the jurisdiction of this District.").

the facts bearing on such issues."); *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517

F.3d 235, 241 (5th Cir. 2008).

### C. Transfer to the Northern District of California Is Not Warranted

Transfer is not appropriate because HTC has failed to show that the Northern District of

California is "clearly more convenient" for *all* parties, non-party witnesses, expert witnesses, or

that transfer would serve the interest of justice. *See Aloft Media,* 2008 WL 819956, at *3.

HTC's conclusory and unsupported attack on AGIS's ties to this District (Dkt. 46, at 4, 19, 23-

24) do not discharge HTC of its burden to show that transfer is clearly more convenient. *See In*

*re Apple, Inc.*, 456 Fed. App'x 907, 909 (Fed. Cir. 2012) (denying defendant's petition for a writ

of mandamus seeking a transfer of venue noting that the district court did not give any weight to

defendant's arguments about the plaintiff's "ephemeral connections to the [initial choice of]

forum"); *Stragent, LLC v. Pioneer Elecs. (USA) Inc.*, No. 6:11-cv-278 LED-JDL, 2013 WL

8467476, at *6 (E.D. Tex. May 8, 2013) (denying transfer and noting that the court need not

analyze plaintiff's ties to the forum because defendant failed to show that transfer was clearly

more convenient); *Cell & Network Selection, LLC v. AT & T Mobility LLC*, No. 6:11-cv-706

LED-JDL, 2013 WL 1855972, at *6 (E.D. Tex. Apr. 29, 2013) (same); *U.S. Ethernet*

*Innovations, LLC v. Samsung Elecs. Co.*, No. 6:12-cv-398 MHS-JDL, 2013 WL 1363613, at *6

(E.D. Tex. Apr. 2, 2013) (same).

### 1. Each of the Private Interest Factors Weighs Against Transfer

#### (a) Convenience of the Parties and Witnesses and Cost of Attendance for Willing Witnesses Weigh Against Transfer

For the Court to properly analyze any alleged inconvenience the current forum has on a

witness, the moving party cannot make "a general allegation that the key witnesses are

18

inconveniently located." *Mohamed v. Volvo Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000).

Rather, the movant must provide evidence as to the "relevance and materiality" of the

information these individuals might have and provide "evidence (e.g. a declaration from the

[employees]) indicating that travel to Marshall would constitute an inordinate inconvenience or

expense." *Sanger Ins. Agency, Inc. v. HUB Int'l, Ltd.*, No. 2:13-cv-528, 2014 WL 5389936, at

*2 (E.D. Tex. Mar. 2, 2014 (Gilstrap, J.); *see also Core Wireless Licensing, S.A.R.L v. Apple,*

*Inc.*, No. 6:12-cv-100, 2013 WL 682849, at *4 (E.D. Tex. Feb. 22, 2013).   HTC has failed to

meet this burden.   HTC failed to identify a single party witness, and failed to identify third party

witnesses from HTC Innovation and Google, let alone provide evidence as to the relevant and

materiality of each witness or set forth evidence by each witness identifying any purported

inconvenience.   Dkt. 29 at 20-23.   HTC refers generally to unidentified "potential witnesses"

located in Taiwan, as well as unidentified witnesses employed by purported third parties HTC

Innovation and Google.   *Id.*   This is insufficient.   *See, e.g.*, *Abatix Corp. v. Capra*, No. 2:07-cv-

541, 2008 WL 4427285, at *6 (E.D. Tex. Sept. 24, 2008) (finding factor neutral when movant

identified numerous witnesses but did not adequately detail any inconveniences); *Catalina Mktg.*

*Corp. v. LDM Grp. LLC*, No. 2:07-cv-477, 2008 WL 4239758, at *2 (E.D. Tex. Sept. 9, 2008)

(finding factor neutral when defendant identified one potential witness, but did not provide the

relevance and materiality of the witness); *Johnson v. Armour-Eckrich Meats*, *LLC*, No. 2:07-cv-

498, 2008 WL 4239565, at *2 (E.D. Tex. Sept. 9, 2008) (finding factor neutral when defendant

failed to explain the import of the witness); *see also Aloft Media,* 2008 WL 819956, at *7

(finding cost of attendance of willing witnesses neutral where movant "has not shown that [the

19

47 identified witnesses located near transferee forum] are likely to testify at trial" even "[t]hough it may be more convenient for [them] to testify [there]").[7]

HTC identifies two HTC America employees as "prospective witnesses," but does not set forth evidence that either witness is likely to have relevant knowledge, identify the materiality of their testimony, or set forth evidence that denying transfer would constitute an inordinate inconvenience or expense.  Dkt. 29 at 21; Dkt. 29-2 ¶ 3.  Such a perfunctory identification is not sufficient to carry HTC's burden.  Further, these witnesses, as well as HTC Innovation's unidentified witnesses, are located in Seattle, Washington, and HTC's unidentified witnesses are located in Taiwan.  Dkt. 29 at 20-23.  Any witnesses living in Washington or Taiwan will be required to travel to testify, and many of these witnesses will consider it more convenient to travel to Texas than to California.  *See MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-cv-289, 2009 WL 440627, at *4 (E.D. Tex. Feb. 23, 2009).[8]

HTC's argument that this factor favors transfer because the Northern District of California is more convenient for "Google's critical witnesses" (Dkt. 29 at 22) also fails.  HTC fails to identify any witnesses employed by Google, or provide evidence of their relevance and materiality or any purported inconvenience if transfer is denied (*see Sanger Ins.*, 2014 WL 5389936, at *2).[9]  HTC also ignores that more than 450 individuals employed by Google work in

---

[7] That HTC's unidentified witnesses may be able to work at HTC Innovation offices in the Northern District of California during the trial if transfer is granted (Dkt. 29 at 21) does not relieve HTC of its burden of identifying these witnesses, and providing evidence of relevance and materiality and purported inconvenience, which it failed to do.  Further, to the extent that these unidentified witnesses will remain in a location while not testifying, HTC fails to explain why these individuals cannot work remotely from this District if they are called to testify here.

[8] HTC's argument that the two HTC America employees are located in Seattle, Washington *or* the Northern District of California (Dkt. 29 at 21) is not supported by the declaration of David Wiggins, an employee of HTC America, which provides that both of the employees are located in Seattle, Washington (Dkt. 29-2 ¶ 3).

[9] HTCs mere parenthetical citation to a declaration submitted in another action identifying employees of Google without explanation (Dkt 29 at 6) is insufficient.

Austin, Texas are staffed on product teams including "Android, G Suite, Google Play, people operations, finance, engineering, and marketing."  Rubino Decl., at ¶¶ 3-4.  Thus, potential Google witnesses will be required to travel to testify to either district, and many of those potential witnesses, including those that reside in Texas, will find it more convenient to travel to Marshall, Texas than California.  *See MHL Tek*, 2009 WL 440627, at *4.

Even if HTC had sufficiently identified witnesses, and set forth evidence as to each witness' relevance and materiality and purported inconveniences—which it has not—the convenience factors still do not favor transfer.  HTC does not contest that this District is more convenient for AGIS's primary witness and founder and CEO, Malcom Beyer, Jr. and Sandel Blackwell, an employee of AGIS, who are located in Jupiter Florida and Lenexa, Kansas, respectively.  Dkt. 29 at 20-23; Beyer Decl. ¶¶ 7, 9, 18, 22.  Instead, HTC argues that the convenience of Messrs. Beyer and Blackwell is entitled to little weight.  Dkt. 29 at 22-23.  This argument, however, is in contravention of Fifth Circuit law:  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004).  The Northern District of California is significantly more inconvenient for Messrs. Beyer and Blackwell who would be required to travel an additional 1,620 miles and 1,054 miles, respectively, if this action was transferred.  *See* Rubino Decl., at ¶¶ 2, 5.  Additionally, travelling from Jupiter and Lenexa to Marshall, Texas is far more convenient and faster than travelling to the Northern District of California, and the cost of hotels, rental cars, meals, and other related out-of-pocket travel expenses are higher in California than in Texas.  Rubino Decl. ¶ 2.  Further, contrary to HTC's contention, this District is convenient for Christopher Rice, an AGIS employee, who has agreed

to travel to this District if called to testify.  Beyer Decl.¶ 21.[10]

HTC does not dispute that this District is the most convenient for AGIS witnesses Eric

Armstrong, David Sietsema, or Rebecca Clark, who are located in this District, Austin, Texas,

and Lenexa, Kansas, respectively.  Dkt. 29 at 22.  Rather HTC argues that these witnesses are not

relevant.  *Id.*  HTC is wrong.  Messrs. Armstrong's and Sietsema's relevant knowledge and

anticipated testimony include their knowledge relating to contracts and licenses involving

AGIS's intellectual property and AGIS's software development and quality assurance, which

relates to, *inter alia*, AGIS's damages.  *Supra* Section II.B.; Beyer Decl. ¶¶ 16, 17[11]  Ms. Clark

has relevant knowledge regarding software development and quality assurance.  Beyer Decl.

¶ 19.  HTC's argument that the inconvenience to Mr. Sietsema and Ms. Clark if transfer were

granted is not significant (Dkt. 29 at 22-23) is also wrong.  Mr. Sietsema and Ms. Clark would be

required to travel an additional 1,248 miles and 1054 miles, respectively, if this action were

transferred.  Ex. 1 to Rubino Decl.; *see also In re Volkswagen AG*, 371 F.3d at 204–05.  Further,

this District is also the most convenient for AGIS's technical expert witness, Joseph

McAlexander III, whose office is located in Richardson, Texas in this District.  Rubino Decl. ¶ 5;

*see also Aloft Media*, 2008 WL 819956, at *5 ("[A] patent trial often revolves around the

strength of expert witness testimony, and many experts are also non-party witnesses.") (*citing*

*Mangosoft Intellectual Property, Inc. v. Skype Techs. SA*, No. 2:06-cv-390, 2007 WL 2008899,

---

[10] In connection with another factor—access to sources of proof—HTC identifies Daniel Burns, a patent prosecutor, as a potential prior art witness (Dkt. 29 at 12); however, HTC fails to explain the relevance or materiality of this potential witness.  *Sanger Ins.*, 2014 WL 5389936, at *2; *see also Aloft Media*, 2008 WL 819956, at *5 (giving no weight to prior art witnesses because defendants "fail[ed] to demonstrate how they would be important to their case at trial").

[11] That Messrs. Sietsema and Armstrong were not called as witnesses in a prior case involving different parties and different patents (Dkt. 29 at 15) is irrelevant.

at *2 (E.D. Tex. July 5, 2007)).

The Northern District of California is not more convenient for other relevant and material non-party witnesses, such as employees of cellular carriers such as AT&T, Sprint, and Verizon who are likely to have information regarding the consumer market value of the features enabled by the Accused Products, consumer surveys, and/or marketing information regarding demand for particular applications and features.  Rubino Decl. ¶¶ 6-8.  AT&T is headquartered in Dallas, Texas (*id.*), Sprint is headquartered in Overland, Kansas (*id.*), and Verizon is headquartered in Basking Ridge, New Jersey (*id.*).  Any witnesses in Washington, Kansas, New Jersey, or locations within Texas, but outside this District, will be required to travel to testify and many of these witnesses will consider it more convenient to travel to Texas than to California.  *See MHL Tek, LLC*, 2009 WL 440627, at *4.

Accordingly, the convenience factors do not favor transfer.  *See In re D–Link Corp.*, 183 Fed. App'x 967, 968 (Fed. Cir. 2006) (finding that the district court did not abuse its discretion in denying defendant's motion to transfer where some witnesses resided in the transferee forum, but others resided abroad); *MHL Tek,* 2009 WL 440627, at *4 (finding these factors neutral because witnesses will come from around the country or the globe, and "not all of these party witnesses will find one forum more convenient than the other"); *Aloft Media,* 2008 WL 819956, at *5-7 (finding these factors neutral where witnesses were located in London, New York, Virginia, California, and Texas); *Network-1 Sec. Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 802 (E.D. Tex. 2006), *mandamus denied*, 183 Fed. App'x 967 (Fed. Cir. 2006) (finding the cost of witness attendance and convenience of witnesses to be neutral where witnesses were

located in Connecticut, New York, California, Taiwan, and Israel).[12]

**(b)     Access to Sources of Proof Does Not Favor Transfer**

HTC places significant weight on accessibility to sources of proof, arguing that this factor

favors transfer because third party documents and witnesses are located in the Northern District

of California.  Dkt. 29 at 16-19.  HTC is wrong.  As an initial matter, "the accessibility and

location of sources of proof should weigh only *slightly* in this Court's transfer analysis,

particularly since these factors have been given decreasing emphasis due to advances in copying

technology and information storage."  *Mohamed*, 90 F. Supp. 2d at 778; *see also Abatix Corp.*,

2008 WL 4427285, at *7 (emphasis added).  Nonetheless, this factor does not favor transfer.

First, to show that this factor favors transfer, HTC must identify *specific* relevant

evidence that might be located in the Northern District of California, which it has not done.  *See*

*Invitrogen Corp.*, *v. Gen. Elec. Co.,* No. 6:08-cv-112, 2009 WL 331891, at *2 (E.D. Tex. Feb. 2,

2009).  Instead, HTC's general references to its "documents and source code" which are

purportedly maintained in Taiwan (Dkt. 29 at 16) are insufficient "to show that transfer would

make access to sources of proof either more or less convenient for the parties."  *Invitrogen*

*Corp.*, 2009 WL 331891, at *2.  Further, HTC admits that all of its own documents are located

outside the United States, not in the Northern District of California.  Dkt. 29 at 16.  The only

documents HTC argues might be located in the proposed transferee forum are Google's source

code and Google's "design documentation."  Dkt. 29 at 17.  But AGIS's infringement

contentions rely on Google's open source code and/or application programming interfaces which

---

[12] HTC's reliance on *Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-cv-00258, Dkt. 104 at 18-19 (E.D. Tex. 2017) (Dkt. 29 at 23) is irrelevant because, unlike here, the defendant in that case set forth evidence identifying nine party witnesses located in the transferee district and setting forth the relevance and materiality of those witnesses, and the only plaintiff witness located in the transferor district lived there part-time.

are publicly available (Rubino Decl. ¶ 12) and, assuming *arguendo* that Google's "design documentation" is relevant, HTC has failed to explain why these documents cannot be produced electronically. *Aloft Media*, 2008 WL 819956, at *4. Thus, HTC has failed to show that this factor favors transfer. *Uniloc USA, Inc. v. Distinctive Dev. Ltd.*, 964 F. Supp. 2d 638, 646 (E.D. Tex. 2013) (finding factor did not favor transfer where defendant argued that third party companies were likely to have documents in the Northern District of California, but failed to identify "specific relevant evidence that might be located in that district").[13]

Second, "the location of documents is of little consequence since they will almost certainly be produced electronically." *VCode Holdings, Inc. v. Cognex Corp.*, No. 2:07-cv-138, 2007 WL 2238054, at *3 (E.D. Tex. Aug. 3, 2007). "[P]atent litigation usually involves sources of proof that are readily convertible to an electronic medium" and "it is presumed that the parties will exchange discovery electronically." *Aloft Media*, 2008 WL 819956, at *4. HTC fails to identify the subject matter of any documents or why they cannot be produced electronically in this District. Dkt. 29 at 16-17. Thus, "[a]ny convenience or burden associated with electronic discovery bears little, if any, relation to the physical location of the underlying document." *Aloft Media*, 2008 WL 819956, at *4. Further, this District has held that any physical documents, including the Accused Products, can be shipped just as conveniently to this District as they can elsewhere. *Id.* (finding factor neutral in patent infringement case where defendant failed to identify any physical evidence that would be difficult to convert to electronic medium); *see also Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1000 (E.D. Tex. 2009) ("Because electronic

---

[13] *Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*, No. 2:17-cv-100, 2017 WL 4076052, at *1, 3 (E.D. Tex. Sept. 14, 2017), cited to by HTC (Dkt. 29 at 17) is inapposite because, unlike here, in that case, the defendant set forth evidence of the relevance and materiality of the third parties located in the transferee district and those third parties had no presence in the transferor district.

information can be accessed conveniently in any number of locations, not simply the location where the information is 'stored,' it does not follow that transfer to the location of the stored information is more convenient for anyone.").

Third, although this factor is typically concerned with physical evidence, HTC relies on Google employees identified by other parties in other cases, as well as a prosecuting attorney for some of the Patents-in-Suit.  Dkt. 29 at 18.  However, as discussed, HTC does not set forth evidence regarding the relevance and materiality of these individuals or explain how access to these individuals (or their documents) would be challenged if the case is not transferred.  *Id*.; *Sanger Ins.*, 2014 WL 5389936, at *2.  Moreover, regarding prior prosecution counsel, Mr. Daniel Burns, HTC asserts that he has relevant documents and that "his documents reside in the Northern District of California."  Dkt. 29 at 18.  This cannot be the case.  Mr. Burns formerly was a Partner at Goodwin Proctor LLP and now works as Sr. Corporate IP Counsel at Futurewei Technologies, Inc.  Ex. 9 to Rubino Decl.  Mr. Burns should not have maintained any AGIS-related materials after departing Goodwin.

Finally, HTC's arguments regarding the location and significance of AGIS' documents and witnesses (Dkt. 29 at 18-19) are wrong.  As discussed *supra*, AGIS's books and records are maintained at its office in this District, and AGIS also maintains documents in the offices of its related companies located in Jupiter, Florida; Lenexa Kansas; Austin, Texas.  Beyer Decl. ¶ 9, 10, 17.  Moreover, AGIS's consultant, Eric Armstrong is located in this District and maintains documents relevant to this action in this District.  Beyer Decl. ¶¶ 15-16.[14]  AGIS also intends to obtain evidence relevant to damages, such as the consumer market value of the features enabled

___

[14] As discussed, the fact that Mr. Armstrong did not testify in a case involving different parties and different patents is irrelevant.

by the Patents-in-Suit, consumer surveys, and marketing information regarding demand for particular applications and features from third-party cellular carriers, including AT&T, Sprint, and Verizon, each of whom are substantially closer to this District than the Northern District of California.  Rubino Decl. ¶¶ 6-9.  AGIS has no sources of proof in the proposed transferee district.  Accordingly, this factor weighs against transfer.

### (c)     Availability of Compulsory Process Does Not Favor Transfer

HTC has failed to identify any witness that is unwilling to testify and for which compulsory process is not available in this Court.  Dkt. 46 at 21.  For this reason, this factor does not favor transfer.  *See BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009) (factor "does not favor transfer" because defendant did not identify any witness unwilling to testify and for which compulsory process is not available in the court); *J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. 6:08-cv-211, 2008 WL 5378010, at *3 (E.D. Tex. Dec. 23, 2008) (same); *Cf. Centre One v. Vonage Holdings Corp.*, No. 6:08-cv-467, 2009 WL 2461003, at *6 (E.D. Tex. Aug. 10, 2009) (finding factor neutral where no unwilling witnesses were identified).  Moreover, because the parties have identified non-party witnesses across the nation, neither district has absolute subpoena power over all potential non-party witnesses, and this factor does not favor transfer.  *See RPost Holdings, Inc. v. StrongMail Sys., Inc., No. 2:12-CV-515-JRG*, 2013 WL 4495119 (E.D. Tex. Aug. 19, 2013), at *3.

### (d)     Judicial Economy Weighs Against Transfer

HTC's transfer analysis ignores the gains in judicial economy that will result if transfer were denied.  *See* Dkt. 29 at 23-24.  The Federal Circuit has explained that "[j]udicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice."  *In re Vistaprint Ltd.*, 628 F.3d 1345 (Fed. Cir. 2010).  Courts consider "the existence of multiple

lawsuits involving the same issues" an important consideration because "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*") (citing *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).  Even if cases do not involve "precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources."  *Id.*

This Court presides  over the five AGIS Texas Cases, including the instant case, which involve the same plaintiff, the same Patents-in-Suit, the same underlying technology, and substantially identical claims.  *See supra* § II.F.  Each of these actions will involve similar issues of claim validity, claim construction, claim scope, discovery, evidence, proceedings, and trials. Transferring AGIS's claims against HTC would "create duplicative, parallel proceedings." *ColorQuick, L.L.C. v. Vistaprint Ltd.*, No. 6:09-cv-323, 2010 WL 5136050, at *8 (E.D. Tex. Jul. 22, 2010) (denying transfer based on "gains in judicial economy derived from the Court's handling of a related case); *see also Innovative Display Techs. LLC v. BMW of N. Am., LLC*, No. 2:14-cv-00106-JRG, 2015 WL 1459188, at *5 (E.D. Tex. Mar. 31, 2015) (Gilstrap, J.) (finding factor weighs against transfer because "[defendant's] case is but one of a number of suits presently pending before the Court involving several of the Patents-in-Suit").

HTC's arguments to the contrary fail.  First, its argument that, because it filed its transfer motion at an early stage of litigation, there are no practical problems with transferring venue (Dkt. 29 at 23) is entitled to little weight since it has failed to satisfy its burden to show that the Northern District of California is clearly more convenient.  *Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, No. 6:12-cv-100, 2013 WL 682849, at *4 (E.D. Tex. Feb. 22, 2013) ("the filing of a

transfer motion at an early stage carries little weight if the motion wholly fails to satisfy the requisite burden").  Second, HTC's argument that the Northern District of California is more convenient for witnesses in other AGIS Texas Cases (Dkt. 29 at 24) improperly presumes that the transferee forum is more convenient for all of the cases.  That defendants in the other AGIS Texas Cases also seek transfer does not relieve HTC of its burden to demonstrate that the Northern District of California is a clearly more convenient forum (*Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-cv-376, 2014 WL 1652603, at *2 (E.D. Tex. Apr. 24, 2014) (Gilstrap, J.)), which it has failed to do.  Accordingly, judicial economy weighs against transfer.

2.     **The Public Interest Factors Weigh Against Transfer**

(a)     **This District's Strong Localized Interest in this Dispute Weighs Against Transfer**

This District has a significant interest in "adjudicating a dispute brought by one of its own residents."  *Thurmond v. Compaq Computer Corp.*, No. 1:99-cv-0711(TH), 2000 WL 33795090, at *13; *see also Norman IP Holdings, LLC v. Casio Computer Co., Ltd.*, No. 6:09-cv-270, 2010 WL 4238879 (E.D. Tex. Oct. 27, 2010, at *6.  HTC's argument that AGIS manufactured ties to this District (Dkt. 29 at 25) is unavailing.  Unlike *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) where the plaintiff transported copies of its patent prosecution files from outside the transferor district to an office in the district that it shared with another of its counsel's clients prior to filing suit and *KlausTech, Inc. v. AdMob, Inc.*, No. 6:10-cv-39, 2010 WL 11488898, at *2 (E.D. Tex. Nov. 30, 2010) where the plaintiff had no employees in Texas, AGIS is a Texas company that is operating its business in this District and employs individuals that reside in Texas.  Beyer Decl. ¶ 9, 17.

The Northern District of California does not have a local interest in this action.  Non-

parties are irrelevant when determining whether localized interests weigh in favor of transfer. *See Vertical Computer Sys., Inc. v. LG Elecs. MobileComm U.S.A., Inc.*, No. 2:10-cv-490-JRG, 2013 WL 2241947, at *6 (E.D. Tex. May 21, 2013) (finding factor weighed against transfer where plaintiff was headquartered in transferor forum, even though a non-party was located in transferee district).  HTC has no offices or employees in the Northern District of California (Dkt. 29 at 4), whereas AGIS has legitimate ties to this District (Beyer Decl. ¶¶ 3, 7, 15-16, 18, 22). Thus, this factor weighs against transfer.

### (b)   Court Congestion Weighs Against Transfer

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved[.]"  *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).  The Northern District of California is less efficient at resolving cases; according to recent statistics, this District resolves cases 2.6 months faster (21.1 months) than the Northern District of California (23.7 months).  Ex. 7 to Rubino Decl.  Moreover, the Northern District of California is significantly more congested than this District.  *Id.*  During the twelve-month period ending March 31, 2017, approximately 1,600 more civil cases were pending in the Northern District of California (4,790 cases) as compared to the Eastern District of Texas (3,184 cases).  *See id.*[15] This District is also better equipped to handle patent cases because, among other things, it "has adopted patent rules designed to ensure that patent cases proceed . . . expeditiously."  *MHL Tek, LLC*, 2008 WL 4283120, at *3.  Accordingly, this factor weighs against transfer.

## V.   CONCLUSION

For the foregoing reasons, AGIS respectfully requests that the Court deny HTC's Motion

---

[15] The most recent publicly-available statistics regarding federal court congestion includes data from July 1, 2016 through June 30, 2017.  *See* Rubino Decl. ¶¶ 9-10.

to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue in its entirety.

Dated: February 20, 2018

**BROWN RUDNICK LLP**

*/s/ Vincent J. Rubino, III*
Alfred R. Fabricant
NY Bar No. 2219392
Email: afabricant@brownrudnick.com
Lawrence C. Drucker
NY Bar No. 2303089
Email: ldrucker@brownrudnick.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@brownrudnick.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@brownrudnick.com
Alessandra C. Messing
NY Bar No. 5040019
Email: amessing@brownrudnick.com
John A. Rubino
NY Bar No. 5020797
Email: jrubino@brownrudnick.com
Enrique William Iturralde
NY Bar No. 5526280
Email:  eiturralde@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone: 212-209-4800
Facsimile: 212-209-4801

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**McKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: 903-923-9000
Facsimile: 903-923-9099

**ATTORNEYS FOR PLAINTIFF, AGIS
SOFTWARE DEVELOPMENT, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on February 20, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).


*/s/ Vincent J. Rubino, III*
Vincent J. Rubino, III