**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

AGIS SOFTWARE DEVELOPMENT LLC,　§
　　　　　　　　　　　　　　　　　§
　　　　　　　*Plaintiff,*　　　　　　§
　　　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　　§　　**CIVIL ACTION NO.　2:17-CV-00514-JRG**
　　　　　　　　　　　　　　　　　§
HTC CORPORATION,　　　　　　　§
　　　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　§
　　　　　　　*Defendant.*　　　　　§
　　　　　　　　　　　　　　　　　§

**MEMORANDUM OPINION AND ORDER**

Before the Court is HTC Corporation's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) or, in the Alternative, Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Northern District of California.  (Dkt. No. 29.)  Having considered the Motion, the Court is of the opinion that it should be and hereby is **DENIED** for the reasons set forth herein.

## I.　　BACKGROUND

Plaintiff AGIS Software Development LLC ("AGIS") is a Texas limited liability company with its principal place of business in Marshall, Texas.  (Dkt. No. at 1 ¶ 1.)　Defendant HTC Corporation ("HTC") is a foreign company organized and existing under the laws of Taiwan with its principal place of business in New Taipei, Taiwan.  (*Id.* ¶ 2.)

On June 21, 2017, AGIS filed suit against HTC, alleging infringement of U.S. Patent Nos. 9,467,838; 9,445,251; 9,408,055; and 8,213,970 (the "Asserted Patents").  (Dkt. No. 1.)  On January 22, 2018, HTC filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) or, in the Alternative, Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Northern District of California. (the "HTC Motion") (Dkt. No. 29.)  The Parties completed briefing on HTC's Motion on March

7, 2018.  (Dkt. No. 49.) After considering the Parties' arguments and specifically AGIS's request

for jurisdictional discovery on HTC, (Dkt. No. 40 at 17), this Court ordered limited discovery and

renewed briefing on the issue of personal jurisdiction. (Dkt. No. 51.)

## II.     LEGAL STANDARD

### A.     Personal Jurisdiction

Personal jurisdiction is governed by Federal Circuit law in patent cases.  *Autogenomics, Inc.*

*v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009); *Beverly Hills Fan Co. v. Royal*

*Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994). The plaintiff bears the burden of

establishing that the defendant is subject to personal jurisdiction.  *Celgard, LLC v. SK Innovation*

*Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).  If no jurisdictional discovery is conducted, the

plaintiff need only make a *prima facie* showing.  *Id.*  However, when, as here, there has been

jurisdictional discovery, the preponderance of the evidence standard applies.  *Id.* (citing

*Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1334 (Fed. Cir. 2001)).

Whether a court may exercise personal jurisdiction over an out-of-state defendant is a two-

step analysis: (1) does the state's long-arm statute permit service of process, and if so, (2) does

exercising jurisdiction over the defendant violate due process?  *Autobytel, Inc. v. Insweb Corp.*,

No. 2:07-cv-00524, 2009 WL 901482, at *1 (E.D. Tex. Mar. 31, 2009) (citing *Genetic Implant*

*Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)).  Since Texas's long-arm

statute is coextensive with the due process inquiry, the two inquiries collapse into a single

analysis of whether asserting jurisdiction comports with due process.  *Johnston v. Multidata Sys.*

*Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D.

112, 118 (E.D. Tex. 2009)  Due process is satisfied if (1) the defendant has established

minimum contacts with the forum state; and (2) the exercise of jurisdiction would not offend

"traditional notions of fair play and substantial justice." *Autobytel*, 2009 WL 901482, at \*1 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placemen*t, 325 U.S. 310, 316 (1945)). Once the plaintiff demonstrates that the defendant has sufficient contacts with the forum, the burden shifts to the defendant to show that litigating in the forum would be unfair or unreasonable. *Celgard*, 792 F.3d at 1377.

Minimum contacts can be found on the basis of general jurisdiction, specific jurisdiction, or the stream of commerce theory. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *Beverly Hills Fan*, 21 F.3d at 1566. General jurisdiction exists when the defendant's contacts with the forum are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014). Specific jurisdiction is satisfied when the defendant has "purposefully directed [its] activities at the residents of the forum, and the litigation results from alleged inquires that arise from or relate to those activities." *Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08-cv-00026, 2009 WL 1025467, at \*3 (E.D. Tex. Mar. 26, 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

Under the stream of commerce theory, minimum contacts are found if the defendant "deliver[s] its products into the stream of commerce with the expectation that they will be purchased by customers in the forum State." *Beverly Hills Fan*, 21 F.3d at 1566 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980)).[1] The Supreme Court is split over whether merely placing a product into the stream of commerce, defined as "the regular

---

[1] Placing a product into the stream of commerce can form the basis for specific jurisdiction if the plaintiff alleges patent infringement based on the defendant's shipment of allegedly infringing products into the forum state. *Beverly Hills Fan*, 21 F.3d at 1565 ("The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction.").

and anticipated flow of products from manufacture to distribution to retail sale" (the "Brennan test"), or whether the existence of additional conduct by the defendant purposefully directed toward the forum state (the "O'Connor test") satisfies this test. *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 112, 117 (1987). The Federal Circuit has declined to resolve this split and determines whether the specific facts at issue support jurisdiction under either theory. *Beverly Hills Fan*, 21 F.3d at 1566.

Despite these divergent views, it is undisputed that "unilateral actions of a third party having no pre-existing relationship with the tortfeasor" will not confer jurisdiction over a foreign defendant. *Beverly Hills Fan*, 21 F.3d at 1565 (citing *World-Wide Volkswagen Corp.*, 444 U.S. at 297). Put differently, jurisdiction "arises from the efforts of the [defendant] to serve, directly or indirectly, the market for its product." *Id.* at 1566 (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

If minimum contacts have been found, the defendant bears the burden of showing that it would be unfair or unreasonable to maintain suit in the forum. *Asahi*, 480 U.S. at 121–22 (Stevens, J., concurring in part and concurring in the judgment) (quoting *Int'l Shoe*, 326 U.S. at 320); *Beverly Hills Fan*, 21 F.3d at 1568. This analysis requires balancing various factors: "(1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal citations and quotation marks omitted). Jurisdiction is generally denied in the "rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting

the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568 (internal citations omitted).

## B.     Transfer Under 28 U.S.C. § 1404(a)

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1404(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ("§1404(b) is the sole and exclusive provision controlling venue in patent infringement actions.") (internal citations and quotation marks omitted). For purposes of § 1404(b), a domestic corporation resides only in its state of incorporation. *TC Heartland*, 137 S. Ct. at 1521.

HTC is not a domestic corporation. However, as noted above, once this threshold inquiry is met, the court analyzes public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *Volkswagen I*, 371 F.3d at 203; *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen I*, 371 F.3d at 203 (internal citation omitted). The public factors are "(1) the administrative

difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* These factors are decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

To prevail on a motion to transfer under § 1404(a), the movant must show that transfer is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* at 315; *accord In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012) (holding that a movant must "meet its burden of demonstrating [] that the transferee venue is 'clearly more convenient.'") (internal citation omitted). Absent such a showing, the plaintiff's choice of venue is to be respected. *Volkswagen II*, 545 F.3d at 315. When deciding a motion to transfer under § 1404(a), the court may consider undisputed facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. *See Sleepy Lagoon, Ltd., v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011); *see also Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 18–19 (D.D.C. 2008).

## III. ANALYSIS

### A. Personal Jurisdiction Over HTC

The Court first addresses the issue of personal jurisdiction raised by HTC. HTC is a "Taiwanese corporation with its principal place of business in New Taipei City, Taiwan." (Dkt. No. 29 at 4.) HTC asserts that it has "no connection to this District" as all of its activities relating to the accused smartphones are confined to Taiwan. (*Id.* at 1.) HTC argues that it "develops, tests, and manufactures the accused smartphones in Taiwan," (*id.* at 4), and that its wholly-owned

6

subsidiary, HTC America Inc. ("HTC America"), "imports, markets, and sells [the accused] smartphones" to third parties in the United States. (*Id.* at 4–5.) HTC argues that it has no control or authority over HTC America or the third-party resellers, and therefore "any alleged sale in Texas" by "HTC America or third-party resellers cannot be imputed to [it]." (*Id.* at 12.) As a result, HTC argues that it does not have the requisite minimum contacts with this District necessary to find personal jurisdiction.

AGIS does not dispute that specific or general personal jurisdiction is improper, but instead argues that HTC has sufficient contacts under the stream of commerce theory. (Dkt. No. 40 at 6.) AGIS claims that HTC sells its smartphones "through a distribution channel it established with another HTC entity, with knowledge that, through HTC America's distribution, the accused devices will be sold nationwide, including in Texas." (*Id.*) To support its argument, AGIS points to several facts uncovered in discovery: (1) HTC formed HTC America to sell phones in the United States and uses HTC America as its "exclusive distributor within the U.S.," (Dkt. No. 54 at 2); (2) HTC America primarily distributed its phones through major U.S. carriers, such as Verizon, Spring, AT&T and T-Mobile, during the relevant time period and the underlying distribution agreements were executed by HTC and approved by HTC president-level personnel, (Dkt. No. 59 at 3); (3) HTC knew that HTC America also sells phones on its website, which serves the entire United States, including Texas and this District, (*id.*); (4) HTC commissioned a study on its end-users, which "provided demographic information on HTC owners to be used for advertising purposes" and "identified the top markets for HTC products within the U.S. including Dallas-Ft. Worth, Houston and San Antonio," (*id.* at 2–3), and (5) HTC received "regular sales forecasts and carrier-specific projections from HTC America." (*Id.* at 3.) AGIS avers that these facts demonstrate that "HTC sold its products into a nationwide distribution with the expectation that it

would reach Texas," and that "HTC was aware that its products were sold in Texas," thereby satisfying both the Brennan and O'Connor applications of the stream of commerce test. (*Id.*)

In response, HTC argues that it "is only interested in the sale of phones generally, and that interest is satisfied when HTC America purchases and imports phones from Taiwan." (Dkt. No. 55 at 4.) It has no role in how carriers sell its phones, and AGIS has failed to provide any evidence of sales in Texas or HTC's awareness of such sales. (*Id.*) Whether or how phones end up in Texas is entirely the result of unilateral acts of third-parties. (*Id.*) Thus, "[a]ny arguable chain is broken with HTC America outside of Texas." (*Id.* at 6.)

The Court finds HTC's arguments unavailing. HTC primarily relies on the fact that it has no *control* over HTC America or the third-party resellers, and therefore lacks sufficient contacts under the stream of commerce theory. However, the relevant inquiry is not whether HTC controlled the intermediaries in the distribution chain, but instead whether it "deliver[ed] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Beverly Hills Fan*, 21 F.3d at 1566 (quoting *World-Wide Volkswagen*, 444 U.S. at 297–98). HTC admitted in its briefing that it sells its smartphones to HTC America and that it knew HTC America resells the smartphones to third-party distributors in the United States. (Dkt. No. 29 at 12–13; Dkt. No. 55 at 4.) These third-party distributors have included major carriers such as Verizon, Sprint, AT&T, and T-Mobile. (Dkt. No. 54 at 2.) In fact, HTC was not only aware of this distribution channel, HTC intentionally formed it for that purpose. HTC created HTC America to sell its phones in America, and HTC's own personnel—not HTC America— executed the various agreements with the U.S. carriers. (Dkt. No. 59 at 2.) HTC also commissioned a study on its end-users, which revealed that top markets for HTC products include

Texas.  (*Id.* at 2–3.)  These facts are sufficient to show that HTC "knew, or reasonably could have foreseen, that a termination point of the channel was [Texas]."  *Beverly Hills Fan*, 21 F.3d at 1564.

The Eastern District of Michigan recently found personal jurisdiction based on similar facts.  In *Ford Global Technologies LLC v. New World International, Inc.*, the plaintiff argued that jurisdiction was proper over Defendants New World International, Inc. and United Commerce Centers, Inc. (collectively, "United") because United sold products in Michigan through their national distributor, Auto Lighthouse, LLC ("Auto Lighthouse").  No. 2:15-cv-10394, 2016 WL 3349041, at *1 (E.D. Mich. June 16, 2016). Auto Lighthouse sold products via several websites and did not have any physical stores or inventory.  When an online order was placed, it would purchase the product from New World International Inc., and then ship it to the contiguous 48 states, including Michigan.  *Id.* at *1.  The court found that United had sufficient contacts with Michigan under the stream of commerce theory because: (1) United formed Auto Lighthouse to increase its online presence and sales in the United States; (2) Auto Lighthouse filled its online orders by purchasing the products from United, and sold products throughout the contiguous United States, including Michigan; and (3) United monitored Auto Lighthouse's performance, among other things.  *Id.* at *11–14.  Based on these actions, the court concluded that "United uses Auto Lighthouse, and in particular, Auto Lighthouse's websites, to sell its inventory nationally and into Michigan, and that United is not only aware of the national reach of Auto Lighthouse's business, it aids Auto Lighthouse in maintaining and extending that reach."  *Id.* at *13.

Likewise, HTC sells its products via an established distribution channel through HTC America with knowledge, or at least reasonable foreseeability, that its products will end up in Texas.  *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012) (holding that presence of "defendant's continuous, established distribution channels" is a "significant factor

supporting the exercise of personal jurisdiction [under] *Beverly Hills Fan*"); *see also MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-cv-289, 2008 WL 910012, at *1 (E.D. Tex. Apr. 2, 2008) (finding personal jurisdiction proper over defendant that sold vehicles containing the accused products to a related foreign entity, which sold the vehicles to a related U.S. entity for distribution throughout the U.S., including Texas); *Serius Innovative Accessories, Inc. v. Cabela's, Inc.*, No. 09-cv-102, 2009 WL 9141752, at *3 (S.D. Cal. Nov. 2, 2009) (finding personal jurisdiction even though defendant denied knowledge of sales in California because defendant's "subjective expectations about its products sales are only relevant to the extent they are reasonable" and since defendant's distributor ships nationwide, "the only reasonable expectation is that their products would be marketed and sold in California"). The presence of this intentionally established distribution channel, therefore, provides sufficient grounds to assert personal jurisdiction over HTC.

Notwithstanding the above, HTC argues that a finding of personal jurisdiction would be unfair and unreasonable. However, jurisdiction is not found in the "rare situation[] in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation [therein]." *Beverly Hills Fan*, 21 F.3d at 1568; *see also Burger King*, 471 U.S. at 477 (holding that defendant must present a "compelling case" to defeat jurisdiction if he has purposefully directed his activities at the forum). HTC has failed to show that this is one of those rare cases. AGIS is a Texas company with its principal place of business in this District and as such, it has a strong interest in having its injuries remedied in its home state. Texas also has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). This is especially true when, as here, the sale

of the accused smartphones is not an isolated occurrence but arises from HTC's concerted efforts to serve the U.S. market, including Texas. While there is no dispute that a burden is placed on HTC, a foreign corporation, by being hailed into court in this District, that burden is one that HTC faces in any United States district court and is not one that is easily outweighed by Plaintiff's (and this state's respective) interests in resolving the dispute here.

Accordingly, based on the totality of the circumstances, the Court finds that the exercise of personal jurisdiction over HTC is proper.

## B.   Transfer Under 28 U.S.C. § 1404(a)

The Court now addresses the issue of transfer under § 1404(a). HTC does not dispute that this action could have been properly filed in the Northern District of California, (Dkt. No. 29 at 15), and AGIS is silent on this issue in its briefing. Thus, the threshold requirement for transfer under § 1404(a) has been satisfied. The Court now proceeds to analyze the private and public factors considered in determining whether transfer is appropriate.

### 1.   Private Interest Factors

#### a)   Relative Ease of Access to Sources of Proof

When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, HTC must show that transfer to the Northern District of California will result in more convenient access to sources of proof. *See Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6279907, at *2 (E.D. Tex. Dec. 28, 2017).

HTC argues that this factor favors transfer because relevant documents are "more accessible in the Northern District of California." (Dkt. No. 29 at 16.) HTC submits that it "develops, tests, and manufactures Android smartphones in Taiwan" and as such "maintains its engineering, marketing, and finance documents" there. (Dkt. 29-1 at 2 ¶2, 3 ¶8.) It has no

documents or facilities in this District. (Dkt. No. 29 at 16.) It argues that most of the relevant documents in the United States reside with non-parties outside of Texas. (*Id.*) Its subsidiary and non-party, HTC America, imports the accused devices into the United States, and its documents are relevant to AGIS's damages claim. (Dkt. No. 47 at 6.) HTC America is headquartered in Seattle, Washington and does not maintain any documents in this District. (Dkt. No. 29 at 16.) All of "its records relating to sales, finance, marketing, market analysis, and forecasts [are] in the State of Washington," (Dkt. No. 29-2 at 2 ¶ 5) and can be "securely accessed" at the San Francisco office of HTC America Innovation, Inc. ("HTC Innovation"), a Washington state subsidiary of HTC. (*Id.* at 3 ¶ 10; Dkt. No. 29 at 17.) HTC also explains that non-party Google possesses "critical documentation and sensitive source code" that are physically present in or electronically accessible in the transferee district. (Dkt. No. 29 at 16–17.) AGIS's infringement contentions "focus[] solely on the operation of Google's apps" and "Google's source code for its apps is closed." (*Id.*) HTC represents that Google will not electronically transfer its source code to it or AGIS. (Dkt. No. 29 at 17; Dkt. No. 47 at 8.)[2] Finally, HTC states that the prosecution documents for three of the Asserted Patents are located in the Northern District of California. (Dkt. No. 29 at 18.)

In response, AGIS argues that it maintains its books and records at its office in this District as well as "documents in the offices of its related companies located in Juniper, Florida; Lenexa, Kansas; [and] Austin, Texas." (Dkt. No. 40 at 26.) Its consultant, Eric Armstrong, also has relevant documents in this District, "including e-mails regarding the development of software and marketing which are stored on his computer." (*Id.* at 5.) "AGIS also intends to obtain evidence

---

[2] HTC cites to several declarations from Google witnesses submitted in a related case, *Agis Software LLC v. Huawei*, 2:17-cv-00513. Those citations support HTC's contention that most of Google's documents are stored in or electronically accessible in the Northern District of California. However, those citations do not state, explicitly or implicitly, that Google has refused or will refuse to electronically transfer its source code to HTC or AGIS.

relevant to damages, such as the consumer market value of the features enabled by the Patents-in-Suit, consumer surveys and marketing information regarding demand for particular applications and features from third-party cellular carriers, including AT&T, Sprint, and Verizon," whose headquarters are in Dallas, Texas (AT&T); Overland, Kansas (Sprint); and Basking Ridge, New Jersey (Verizon), each of which AGIS states is "substantially closer and more convenient to this District than to the Northern District of California." (*Id.* at 26–27.) With respect to Google's source code, AGIS asserts that its infringement "contentions rely on Google's open source code and/or application programming interfaces which are publicly available" and thus sees no reason why the parties cannot access it in this District. (*Id.* at 24–25.) It also argues that even if Google has relevant documentation, "HTC fails to identify the subject matter of any documents or why they cannot be produced electronically in this District." (*Id.* at 25.)[3]

HTC points to relevant documents that are stored with it in Taiwan, with its subsidiary and non-party HTC America in Washington, and with non-party Google in California. As a foreign corporation with documents well outside the United States, the relative ease of access to its documents will not substantially change across different districts and is thus neutral. HTC submits that documents from Google and HTC America are relevant to AGIS's infringement and damages claims, respectively, and are stored in locations much closer to the transferee district.[4]

---

[3] On September 19, 2018, HTC moved to supplement the record in support of its motion to transfer venue to the Northern District of California. (Dkt. No. 70.) In its motion, HTC provided evidence that AGIS served a subpoena on Google in both of the consolidated cases, *Agis Software Development, LLC v. Huawei Device USA Inc. et al.*, No. 2:17-cv-513 and *Agis Software Development, LLC v. HTC Corp. et al*, No. 2:17-cv-514. The subpoena sought the production of Google's confidential source code for several of the accused applications in the Northern District of California. HTC argued that these subpoena notices rebut AGIS's claims that its infringement claims rest solely on Google's publicly available source code and that such source code is located in the Northern District of California. The Court granted HTC's motion to supplement the record. (Dkt. No. 76.) The Court acknowledges that the subpoenas served on Google suggest that Google possesses relevant documents in the transferee forum.

[4] AGIS argues that Google can electronically transfer its documents to this District and so that should counsel against transfer. While it is true that documents in digital form can be easily transferred electronically, the Fifth Circuit nonetheless has made clear that for purposes of this factor, the relevant inquiry is the ease of access to where information is *stored*. *Implicit v. Trend Micro*, No. 6:16-cv-00080, 2016 U.S. Dist. LEXIS 191571, at *5 (E.D. Tex. Sept. 1, 2016) (citing *Volkswagen II*, 545 F.3d at 316) ("Despite technological advances in transportation of

Accordingly, those sources of proof weigh in favor of transfer. AGIS, on the other hand, points to sources of proof located in this District, Kansas, and Florida. These documents include "AGIS's books and records," documents relevant to software and marketing from its consultant Eric Armstrong, and "documents relevant to damages" from "third-party cellular carrier, including AT&T, Spring, and Verizon." (Dkt. No. 40 at 26-27.) Texas, Kansas, and Florida are substantially closer to this District than to the Northern District of California, and thus those sources of proof weigh against transfer.

On balance, while relevant documents reside in multiple locations, the Court finds that this factor weighs slightly in favor of transfer given that a majority of the documents relevant to the accused products are located closer to the transferee district and that defendants generally face a heavier evidentiary burden in patent cases. *Godo Kaisha IP Bridge I. v. Xilinx, Inc.*, No. 2:17-cv-00100, 2017 WL 4076052, at *3 (E.D. Tex. Sept. 14, 2017); *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (holding that relevant evidence in patent cases often comes from the accused infringer and may weigh in favor of transfer to that location).

### b) Availability of Compulsory Process

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *In re Volkswagen II*, 545 F.3d at 216. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See Virtual Agility, Inc. v. Salesforce, Inc.*, No. 2:13-cv-00011, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013

---

electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered."). While this arguably appears illogical in today's world, the Court follows such guidance in its analysis.

amendments to Rule 45).  First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse.  Fed. R. Civ. P. 45(c)(1)(A).  Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense."  Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii).  Third, a district court has nationwide subpoena power to compel a non-party witness's attendance at a deposition within 100 miles of where the witness lives or works.  Fed. R. Civ. P. 45(a)(2), 45(c)(1).

HTC has named multiple third-party witnesses who reside in the Northern District of California and who are alleged to be relevant to this case.  (Dkt. No. 29 at 20; Dkt. No. 47 at 5–6.)  These witnesses are: (1) non-party Google witnesses, including: Drew Rowny, Project Manager of Android Messages; Andrew Lee, Technical Lead for Google Hangouts; Brian Johnson, technical lead for Google Plus; William Luh, Technical Lead for Google Maps; Andrew Oplinger, Technical Lead for Google Maps; and Tom Green, Technical Program Manager responsible for Google Maps releases; and (2) Mr. Daniel Burns, the prosecuting attorney of three of the Asserted Patents.  (Dkt. No. 47 at 5–6.) The Google witnesses are relevant to AGIS's infringement case and at least some of them are likely to have relevant information based on each of their roles as technical leads.  (*Id.* at 5.)  Mr. Burns, as prosecuting attorney for three of the Asserted Patents, "has knowledge regarding their prosecution, the prior art, enforceability, and AGIS's potential claim of conception and reduction to practice." (*Id.* at 6.)[5]  HTC argues that each of these non-parties are subject to compulsory process in the Northern District of California and "[i]f this case

[5] Since patent prosecuting attorneys are rarely called to trial, especially where as in this case there is no claim of inequitable conduct, the Court gives little weight to the availability of Mr. Burns.  *See BMC Software, Inc. v. ServiceNow, Inc.*, No. 2:14-cv-904, Dkt. No. 77 at 9 (E.D. Tex. Apr. 30, 2015).

remains in Texas, this Court will be unable to compel [them] to testify at trial." (Dkt. No. 29 at 20.)

In contrast, AGIS has identified only two third-party witnesses: Eric Armstrong, "a former AGIS, Inc. employee [located in this District], who is now a full-time consultant for AGIS and AGIS, Inc.," and Joseph C. McAlexander, AGIS's technical expert, located in nearby Richardson, Texas. (Dkt. No. 40 at 5.) Mr. Armstrong "is expected to have relevant documents. . . regarding the development of software and marketing." (*Id.*) His presence, therefore, weighs against transfer, as he is subject to this Court's subpoena power but lies beyond the subpoena power of the Northern District of California. Mr. McAlexander, however, is a prospective expert and is properly considered as a willing witness. As such, he should not be counted as an unwilling third-party under this factor. *See AGIS v. Huawei Device USA Inc., et al.*, No. 2:17-cv-00513, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018) ("Access to witnesses for presentation at trial, which is the purpose of the venue transfer analysis, is properly considered under either the second factor, relating to the Court's subpoena power to compel testimony at trial, or the third factor, which relates to the cost of attendance for willing witnesses. These factors do not permit a single source of proof or witness to be 'double counted' or unduly influence the analysis.") (internal citation omitted). The Court thus finds that the only identified third-party witness for AGIS is Mr. Armstrong.

Based on the foregoing, the Court finds that this factor weighs in favor of transfer. AGIS has identified only one witness subject to this Court's subpoena power whereas HTC has named several non-party witnesses that would be subject to the transferee court's subpoena power.

### c) Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Genentech*, 566 F.3d at 1342. "When the distance between an existing venue for trial

of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317).

HTC argues that the Northern District of California is "far more convenient" for its witnesses. First, HTC employees work in Taiwan and it is easier to travel from Taiwan to San Francisco, California than to Marshall, Texas. HTC employees "can [also] work from HTC Innovation's facilities while in San Francisco," which would mitigate any "negative impact to HTC Corp.'s employees day-to-day work." (Dkt. No. 29 at 21.) Second, non-party HTC America witnesses, Nigel Newby-House, the Associate Vice President of Product Planning & Go-to-Market, and Andrew Pudduck, the Vice President of Marketing, are located in Washington state. (*Id.* 21; Dkt. No. 47 at 6–7.)[6] Since HTC America, and not HTC, "imports, markets, and sells [the accused] smartphones in the United States," they will be important witnesses to AGIS's damages claim. (Dkt. No. 47 at 6–7.) It is more convenient for them to travel to the Northern District of California, and like HTC's employees, HTC America employees can work out of HTC Innovation's San Francisco offices. Finally, a co-inventor on the patents-in-suit lives near Seattle, Washington "and would likewise be less burdened if the case were transferred to the Northern District of California." (Dkt. No. 29 at 22.)[7]

AGIS provides that its key witnesses will be Eric Armstrong (Allen, Texas), Malcom Beyer (Jupiter, Florida), David Sietsema (Austin, Texas), Sandel Blackwell (Lenexa, Kansas), and

---

[6] In its briefs, HTC does not argue that non-party HTC America witnesses would be subject to the subpoena power of the transferee court. Instead, they argue that it would be more convenient for these non-party witnesses to travel to the Northern District of California, thereby implying that these witnesses are willing witnesses and are thus properly considered under this factor. These witnesses are not considered under the second factor (availability of compulsory process) and are not double-counted.

[7] HTC argues that the Northern District of California would be more convenient for third-party witnesses from Google. (Dkt. No. 29 at 22.) However, as discussed above, such witnesses are not considered to be willing witnesses and therefore can only be properly considered under the second factor since witnesses should not be double-counted.

Rebecca Clark (Lenexa, Kansas), and that the Eastern District of Texas is "the most convenient" forum for each of them. (Dkt. No. 40 at 18–23; Dkt. No. 49 at 6–7.) In addition, Christopher Rice, an AGIS employee, has agreed to travel from Washington "to this District if called to testify." (Dkt. No. 40 at 21-22.) AGIS also argues that the "Northern District of California is not more convenient for other relevant and material non-party witnesses, such as employees of cellular carriers such as AT&T, Sprint, and Verizon," who have headquarters in Dallas, Texas; Overland, Kansas; and Basking Ridge, New Jersey, respectively. (*Id.* 23.)

On balance, the Court finds that this factor weighs slightly against transfer. AGIS has named five witnesses that live in or around Texas for which travel to this District would be more convenient. HTC has pointed to witnesses located in Taiwan, Washington, and California for which travel to the transferee district would be more convenient. While at first blush it appears that HTC has identified more witnesses, the Court gives little or no weight to several of them. First, the difference in travel time for HTC's employees to travel from Taiwan to San Francisco compared to Marshall is small and so it is not clear that the Northern District of California is "clearly more" convenient for those witnesses. Second, HTC explains that the transferee district is more convenient for Mr. Rice, a co-inventor who lives in Washington. However, according to a declaration submitted by AGIS, Mr. Rice has agreed to travel to Texas if called on to testify. (Dkt. No. 40-1 ¶ 20.) Finally, HTC names several non-party Google witnesses who live in California. As discussed above, such witnesses are not considered to be willing witnesses and can only be properly considered under the second factor since witnesses should not be double-counted. Taken together, the Court finds that HTC has two witnesses for which travel to California would be more convenient: Nigel Newby-House and Andrew Pudduck. Since AGIS has identified five witnesses

that reside in or around Texas and HTC has identified only two witnesses that reside near California, the Court finds that this factor weighs slightly against transfer.

### d) All Other Practical Problems

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011).

HTC argues that "[t]his case is still in its early stages—no docket control order has been entered, nor has any discovery been conducted" and thus "transfer would not cause significant delay." (Dkt. No. 29 at 23.) AGIS argues that judicial economy disfavors transfer because "[t]his Court presides over five AGIS Texas Cases, including the instant case, which involve the same plaintiff, the same Patents-in-Suit, the same underlying technology, and substantially identical claims" and thus "[t]ransferring AGIS's claims against HTC would 'create duplicative, parallel proceedings.'" (Dkt. No. 40 at 28.)

As this Court has previously noted, "certain cases warn against giving excessive weight" to consideration of copending cases in evaluating judicial economy under § 1404. *Oyster Optics, LLC v. Coriant Am., Inc.*, No. 2:16-cv-1302, 2017 U.S. Dist. LEXIS 155586, at *22 (E.D. Tex. Sept. 22, 2017) (citing *In re Google, Inc.*, No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017). However, "consideration to the existence of copending cases is not foreclosed." *Oyster Optics*, 2017 U.S. Dist. LEXIS 155586, at *22. "Rather, *In re Google* indicates that courts should avoid considering copending cases which currently have, or have had, motions to transfer venue to avoid any 'double count' in according proper weight." *Id.* at *22–23.

In every copending case that AGIS point to, a motion to transfer venue and/or dismiss for improper venue has been filed. (*See* Dkt No. 46; 2:17-cv-516, Dkt. No. 53; 2:17-cv-514, Dkt. No. 29; 2:17-cv-517, Dkt. No. 38.) Accordingly, the Court does not consider any of the copending cases in evaluating the judicial economy of retaining the action under this factor. With no separate basis to support judicial economy or some other practical problem which would result from transfer, AGIS's position is rebuffed and the Court finds that this factor is neutral.

### 2. Public Interest Factors

#### a) The Administrative Difficulties Flowing from Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. HTC argues that both venues "offer comparable times" and so this factor is neutral. (Dkt. No. 29 at 25.) AGIS argues that the median time for cases to go to trial is much faster in this District and this factor weighs against transfer. (Dkt. No. 40 at 30.) Though the statistics vary slightly by source, this Court has consistently found that median time to trial in this District is several months faster than the Northern District of California. *See, e.g.*, *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-cv-1112, 2015 WL 1885256, at *10 (E.D. Tex. Apr. 24, 2015); *ContentGuard Holdings, Inc. v. Google, Inc.*, No. 2:14-cv-61 (Dkt. No. 38) (E.D. Tex. Apr. 16, 2014) ("The six-month difference in median time, though not substantial, is not negligible."). Accordingly, the Court finds that this factor weighs slightly against transfer.

#### b) Local Interest in Having Localized Interests Decided at Home

HTC argues that the "Northern District of California has a strong interest in this case because Google's apps are central—the heart of—this case, and because most of the relevant witnesses reside and work in the Bay Area." (Dkt. No. 29 at 24–25.) AGIS argues that it is a Texas company and this District "has a significant interest in 'adjudicating a dispute brought by

one of its own residents.'" (Dkt. No. 40 at 29.) AGIS correctly points out that non-parties, such as Google, "are irrelevant when determining whether localized interests weigh in favor of transfer." (*id.* at 29–30), and thus absent other evidence, the Northern District of California does not have a strong local interest in this action. *See Astute Tech., LLC v. Learners Digest Int'l LLC*, No. 2:12-cv-689, 2014 U.S. Dist. LEXIS 197246, at *32 (E.D. Tex. Apr. 28, 2014) (Bryson, J., sitting by designation) ("While LDI argues that the Western District of Wisconsin has an interest in determining if technology employed by one of its resident corporations, Sonic Foundry, infringes a valid patent, that interest, affecting only a third party that is a stranger to the lawsuit, is not of sufficient magnitude to be an important consideration in the transfer decision."). Accordingly, the Court finds that this factor weighs against transfer.

### c)      Avoidance of Unnecessary Conflicts of Law

HTC submits that this factor is neutral, (Dkt. No. 29 at 25), and AGIS does not argue one way or the other. The Court agrees with HTC that "there appears to be no unique conflict of law issues" and finds this factor neutral. (*Id.*)

### d)      The Familiarity of the Forum with the Governing Law

HTC argues that this factor is neutral because both forums are familiar with patent law, whereas AGIS argues that this District is "better equipped to handle patent cases because, among other things, it has adopted patent rules designed to ensure that patent cases proceed . . . expeditiously." (Dkt. No. 40 at 30.) AGIS's argument concerns judicial economy, and not familiarity with patent law, and is more appropriate under the first public interest factor. Either way, the Court agrees with HTC that this factor is neutral.

Having considered the relevant factors, the Court finds that HTC has not met its burden that the Northern District of California is "clearly more convenient," *Volkswagen II*, 545 F.3d.[8]

## IV. CONCLUSION

For the reasons stated above, HTC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) or, in the Alternative, Transfer Venue Pursuant to 28 U.S.C. § 1404(a) to the Northern District of California is **DENIED**.

**So ORDERED and SIGNED this 28th day of September, 2018.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[8] The Court notes that the facts of this case are distinguishable from those that were present in recent decision: *In re HP, Inc.*, 2018-149, Dkt. No. 16 (Fed. Cir. Sept. 25, 2018). In that case, the Federal Circuit granted mandamus, finding that the district court "refus[ed] to transfer despite weighing several factors in favor of transfer and no factor in favor of keeping the case." *Id.* at 4. Unlike *HP*, however, this Court has found several factors that weigh *against* transfer. Moreover, the defendant in *HP* was a domestic corporation headquartered in the transferee district and had several employees living in the transferee district. HTC, in contrast, is a foreign corporation headquartered in Taiwan with no employees residing in the Northern District of California. In the *HP* decision, the Federal Circuit declined to treat the "clearly more convenient" standard as what it characterized as "far more convenient." While this provides some level of guidance to district courts, there is no clear guidance as to precisely where on the spectrum of convenience the "clearly more convenient" standard falls. It seems logical that if it should not be "far more convenient" then it also should not be "merely more convenient," especially if real and meaningful weight is to be afforded to a plaintiff's choice of venue. Until more precise guidance is provided, this Court continues to give "clearly more convenient" its plain and ordinary meaning and, by analogy, treats it on the order of *clear and convincing* evidence as distinguished from and yet existing in between a *preponderance* and *beyond a reasonable doubt*.